[No. 2308-1.    Division One.    May 5, 1975.]

Nautilus, Inc., *Respondent*, v. Transamerica Title Insurance Company of Washington, *Appellant*.

*Shidler, McBroom, Gates & Baldwin* and *James R. Irwin,* for appellant.

*James C. Young,* for respondent.

FARRIS, J.—Nautilus, Inc., the insured under a purchaser's standard coverage policy of title insurance, brought action against Transamerica Title Insurance Company, the insurer, for failure to defend a lawsuit brought in Jefferson County Superior Court in December 1969, against Nautilus and others. The trial court held that Transamerica should have defended the action and granted judgment to Nautilus for the reasonable value of 350 feet of second class tide lands which Nautilus gave up in a pretrial settlement, plus costs and attorney fees in the total sum of $23,071.35. Transamerica appeals.

The primary question on appeal is whether, by the terms of the policy, Transamerica was obligated to defend the action and, if it was, what damages are proper. It is also argued that the trial court erred in striking two of Transamerica's affirmative defenses.

On January 13, 1950, the State of Washington conveyed certain real property to Trail's End Homesites, Inc. In 1951, the property was platted and submitted with maps to the county commissioners, who approved the platting. An addendum to the plat, which was of record when Transamerica issued the title insurance policy to Nautilus, shows the eastern boundary of the property owned by Nautilus to be

the government meander line which the map locates in the waters of Hood Canal.

In 1967, Nautilus purchased certain real property which included second class tidelands from a private party; Transamerica insured title. The tidelands conveyed extended from the line of ordinary high tide fronting the uplands to the line of extreme low tide. The legal description of that property included certain property which was included in the Trail's End plat.

The 1969 Trail's End suit against Nautilus et al was brought to quiet title to the tidelands, alleging ownership to the government meander line; this claim encompassed land included in the Nautilus parcel. The action was amended to allege, in addition, a claim of ownership by adverse possession. Nautilus tendered defense of the action to Transamerica which refused to defend relying upon general exception No. 1 of its policy which excludes:

> Encroachments or questions of location, boundary and area, which an accurate survey may disclose; public or private easements not disclosed by the public records; rights or claims of persons in possession, or claiming to be in possession, not disclosed by public records; . . . water rights or matters relating thereto; any service, installation or construction charges for sewer, water or electricity.

Transamerica considered the action to be a boundary dispute which an accurate survey would resolve. Nautilus settled the action by conveying 350 front feet of the second class tidelands to Trail's End and brought action against Transamerica in March of 1972 to recover damages for failure to defend.

Nautilus argues that the dispute represents a "defect in title" as that phrase is used in paragraph 2 of the insurance policy and that Transamerica was obligated to defend the action because of the "conditions and stipulations" of the insurance policy, which provides in pertinent part:

> The Company shall have the right to, and will, at its own expense, defend the insured with respect to all demands and legal proceedings founded upon a claim of

title, encumbrance or defect which existed or is claimed to have existed prior to the date hereof and is not set forth or excepted herein; . .. .

The trial court upheld Nautilus' contention that the Trail's End dispute concerned a "title defect" of a character covered by the insurance policy:

TRANSAMERICA TITLE INSURANCE COMPANY OF WASHINGTON, because of its refusal to defend the Jefferson County lawsuit Cause No. 7659, and the claims made thereunder or therein in both the original complaint and the amended complaint, which claims were covered under the terms of the title insurance policy with the plaintiff herein, and which claims were not excepted from the policy, breached its contract with the plaintiff, and is therefore liable for the costs and expenses incurred by the plaintiff, up to the policy limits, for any sums reasonably and necessarily expended by the plaintiff, including the costs of reasonable attorney's fees and the reasonable value of any property given over in settlement thereof.

Conclusion of law No. 2. The findings of fact support the conclusion.

The claim of the plaintiff in the Jefferson County case does not fall within any of the exceptions set forth in paragraph #1 of the insuring policy issued by the defendant herein, the first exception being "Encroachments or questions of location, boundary and area which an accurate survey may disclose." If a survey had been undertaken it would have disclosed the meander line and the line of ordinary high tide. Such a survey would not have been dispositive of the claims in the Jefferson County lawsuit because there would still have been the claim of title to the meander line even though the location of the line of ordinary high tide and the meander line had been established. The exception in the policy set forth above does not apply to defeat the claim of the plaintiff in this action.

Finding of fact No. 10. While this construction of the contract is not properly characterized as a factual finding, *see Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc.*, 13 Wn.2d 370, 125 P.2d 668 (1942); *Murray v. Western*

*Pac. Ins. Co.*, 2 Wn. App. 985, 472 P.2d 611 (1970), we find that it is nonetheless a correct interpretation of the contract as a matter of law.

■ In the interpretation of insurance contracts, language must be given its ordinary meaning, *Lesamiz v. Lawyers Title Ins. Corp.*, 51 Wn.2d 835, 322 P.2d 351 (1958); *Port Blakely Mill Co. v. Springfield Fire & Marine Ins. Co.*, 59 Wash. 501, 110 P. 36 (1910), and where two constructions are possible, the "construction most favorable to the insured must be applied, . . . " *Selective Logging Co. v. General Cas. Co. of America*, 49 Wn.2d 347, 351, 301 P.2d 535 (1956); *Myers v. Kitsap Physicians Serv.*, 78 Wn.2d 286, 474 P.2d 109 (1970). Further, individual clauses must be read in light of the whole contract, *see Holter v. National Union Fire Ins. Co.*, 1 Wn. App. 46, 459 P.2d 61 (1969), so as to effect the intent of the parties, *see Ames v. Baker*, 68 Wn.2d 713, 415 P.2d 74 (1966). Construction which contradicts the general purpose of the contract or results in hardship or absurdity is presumed to be unintended by the parties, *see Hansen & Rowland, Inc. v. Fidelity & Deposit Co.*, 72 F.2d 151 (9th Cir. 1934).

Transamerica knew from the public record about the conflict between the Trail's End plat and the Nautilus property at the time it issued its policy. The policy contained no specific coverage exception regarding the disputed tidelands. Transamerica explained that it assumed the "accurate survey" exception to the policy handled the matter since in its opinion an accurate survey would reveal the error in the Trail's End plat. The trial court found, and we agree, that although a survey would establish a line of ordinary high water and the meander line, the dispute was over who owned the land between those points. A survey would therefore not be dispositive of the dispute; the exception does not apply.

■ Transamerica also argues that because the amended complaint in the Trail's End lawsuit alleged ownership by adverse possession, usually an exception under the policy

since the basis of such ownership claim is generally not of public record, Transamerica was not required to defend the action. The trial court considered the argument and found:

The claim of the plaintiff in the Jefferson County case does not fall within the following portion of general exceptions set forth in paragraph #1 of the policy, "public or private easements not disclosed by the public records; rights or claims of persons or [sic] claiming to be in possession, not disclosed by the public records." From the testimony and the amended complaint filed in the Jefferson County case, it appears that part of the claim of the plaintiffs therein was based upon adverse possession. That was a claim asserted in the amended complaint. The original complaint clearly is based upon a claimed defect in title, but even as to the claim of adverse possession, part of that adverse possession was disclosed by the filing of the plat of First Addition to Trail's End Homesites, Inc. on the 17th day of December, 1951, and recorded in Volume 3 of Plats, Page 32, Records of Jefferson County, Washington. Not only was this plat a matter of public record, but in addition thereto VERN ARNOLD, one of the witnesses for the defendant herein testified that he knew of the plat prior to the issuance of the policy. The exception in the policy set forth above does not apply to defeat the claim of the plaintiff in this action.

Finding of fact No. 11. The finding is supported by substantial evidence. It will not be disturbed on appeal.

Transamerica next argues that even if the trial court is correct in finding that Transamerica should have defended the action, the damage award was improper because (1) the $50 front foot valuation of the second class tidelands was not within the range of accepted testimony and was unsupported by substantial evidence, and (2) damages should have been allocated so as to limit the award to damages occasioned by classes of disputes covered by the policy.

■ The trial court considered that argument:

In the settlement of the Jefferson County lawsuit in addition to other deeds to various property owners, the plaintiff herein deeded 350 feet of second class tideland on Hood Canal to the plaintiffs in the Jefferson County lawsuit. The measure of damages is the reasonable mar-

ket value of the 350 feet of property conveyed in settlement of the case at the time of the settlement. Because of the uniqueness of this particular piece of second class tideland; because of its access, to-wit: the ease of ingress and egress to established highway facilities and its particularl [sic] locaton [sic] on Hood Canal (close to the Hood Canal Bridge), the Court finds that the reasonable market value of this property was $50.00 per front foot, or $17,500.00 at the time settlement was made.

Finding of fact No. 15. The court in its oral opinion thoroughly analyzed[1] the evidence presented on the question of the front foot valuation of the tidelands. While language of the court indicates that it did not find that either party presented valuations of comparable land, it had before it differing opinions which presented a wide range of factors all of which it could properly consider in arriving at a valuation. Recently, we held:

> A party need not prove damages with mathematical certainty to recover where the fact of damage is well established. *Reefer Queen Co. v. Marine Constr. & Design Co.*, 73 Wn.2d 774, 440 P.2d 448 (1968). The evidence of damage, however, must be sufficient to afford a reasonable basis for estimating loss so that speculation and conjecture do not become the basis. *Jacqueline's Wash., Inc. v. Mercantile Stores Co.*, 80 Wn.2d 784, 498 P.2d 870 (1972).

*Burkheimer v. Thrifty Inv. Co.*, 12 Wn. App. 924, 928, 533 P.2d 449 (1975).

■ We find that the trial court's damage award is not based upon speculation but is supported by substantial evidence; it is within the "range of the evidence." *Cromwell v. Gruber*, 7 Wn. App. 363, 368, 499 P.2d 1285 (1972).

■ Transamerica also argues that because Trail's End claimed an ownership right in the tidelands in reliance upon several legal theories, some of which were allegedly not covered by the terms of the insurance policy, damages should be allocated so that Transamerica would only be responsible for damages arising from theories covered by

---

[1]Statement of facts, pp. 416-28.

its policy. We reject the argument. Transamerica twice refused the defense of the action. When an insurer refuses to defend when it is obligated to do so, the insured may recover the total amount paid in effecting a reasonable settlement together with costs and attorney fees. *See Evans v. Continental Cas. Co.*, 40 Wn.2d 614, 245 P.2d 470 (1952). A bad faith refusal is not a requisite to such recovery. Transamerica's reliance on *Waite v. Aetna Cas. & Sur. Co.*, 77 Wn.2d 850, 467 P.2d 847 (1970), is misplaced. Factually, *Waite* is distinguishable; there the insurance company's offer to defend was refused because the insured feared a conflict of interest. Here, the insurer made no offer to defend. Further, dictum in *Waite* indicates that the ruling there is consistent with our ruling here:

> The rule is that where an insurer wrongfully refuses to defend, it will be required to pay the judgment or settlement to the extent of its policy limits and also to reimburse the insured for his costs reasonably incurred in defense of the action. . . .
>
> . . . where a claim for damages is asserted upon more than one theory of recovery, and the suit is settled or goes to the jury with no interrogatories which will enable the jury to state the findings on which it bases its verdict for the claimant, an insurer who refused to defend the action is estopped to assert that the claim was not covered.

*Waite v. Aetna Cas. & Sur. Co., supra* at 856.

In addition, while we need not reach the question, the adverse possession asserted by Trail's End was "disclosed by public records." It can therefore be argued that Transamerica was obligated to defend against that claim as well.

Finally, Transamerica argues that the trial court erred in striking two affirmative defenses prior to trial:

> 4. The stipulated settlement agreement entered into between the plaintiffs and some of the defendants in Jefferson County Cause No. 7659 was made without the knowledge or consent of this defendant, and is not binding upon this defendant.
>
> 5. Transamerica Title Insurance Company was brought into the action in Jefferson County Superior Court under

Cause No. 7659 as an additional third party defendant by Laura S. Bugge, and any claims by the plaintiff herein, Nautilus, Inc., should have been made against Transamerica Title Insurance Company in that action as a compulsory crossclaim [*sic*]. Plaintiff has waived and is now estopped from asserting this claim against Transamerica Title Insurance Company.

Transamerica has cited no authority, nor have we found any, which requires an insured party to give the insurer notice of a proposed settlement after the insurer has twice refused to defend the action upon which the settlement is based. Affirmative defense No. 5 was properly dismissed; there is no rule of law or court rule which would have required Nautilus to join Transamerica to the Trail's End lawsuit by way of a compulsory *cross claim*.

·Affirmed.

SWANSON and CALLOW, JJ., concur.