[No. 80999-2.   En Banc.]
Argued March 12, 2009.   Decided June 18, 2009.

DALE CAMPBELL ET AL., *Petitioners*, v. TICOR TITLE INSURANCE COMPANY, *Respondent*.

*Richard D. Wall*, for petitioners.
*Brooke Kuhl* (of *K&L Gates, LLP*), for respondent.

¶1 STEPHENS, J. — Petitioners Dale Campbell and Tina Fereira, a married couple (the Campbells), purchased a lot in Stevens County that had once been part of a larger parcel. At the time of purchase, they obtained title insurance from Ticor Title Insurance Co. Some years later a neighbor initiated an action to reform the Campbells's deed so that it would be encumbered by a pedestrian easement. The easement was originally granted at the time the larger parcel was subdivided and was intended to burden the lot next to the Campbells but was obstructed by a home on the burdened property. The Campbells tendered defense of the reformation suit to Ticor. Ticor refused to defend, claiming the title policy clearly excluded coverage where the public records about the Campbells's property did not disclose the existence of the easement. The Campbells and Ticor cross-moved for summary judgment on the issue of the duty to defend. The superior court granted summary judgment in favor of Ticor and the Court of Appeals affirmed. We affirm the Court of Appeals, agreeing that Ticor had no duty to defend under the title policy here.

## FACTS AND PROCEDURAL HISTORY

¶2 Frank and Rita Vickery (the Vickerys) owned a parcel of land in Stevens County located on Deer Lake. In 1995,

they received a certificate of exemption from Stevens County in order to subdivide the land into three lots, designated as lots A, B, and C. At the time of the subdivision, the Campbells lived in an existing house on lot A and another family lived in an existing house on lot B (the Gromo house). In 1996, the Vickerys granted a pedestrian easement benefiting lot C and burdening lot B so that lot C could have access to a dock on Deer Lake. The easement was intended to run adjacent to lot A, along the property line between the Gromo house on lot B and the Campbells house on lot A.

¶3 In 2001, the Campbells purchased lot A. They obtained title insurance from Ticor.

¶4 In 2002, a recorded survey of the original subdivided parcel revealed that the easement as described ran through the Gromo house on lot B.

¶5 Sometime in 2004 or early 2005, Jerry Edwards purchased lot C, sight-unseen, based on representations from the real estate agent that there was a pedestrian easement to the lake. Following his purchase of lot C, Edwards learned from the Gromos and Campbells that the easement was not usable due to the fact that it ran through the Gromo house on lot B. In 2005, Edwards initiated suit against a number of parties, including the Campbells. Among other remedies, his complaint sought reformation of the certificate of exemption and the parties' deeds so that the easement could be redrawn to burden lot A, thereby granting lot C access to the lake.

¶6 The Campbells tendered defense of Edwards's suit and issued a notice of claim to Ticor in November 2005. In January 2006, Ticor denied coverage of the claim and refused to defend, asserting policy exclusions for encumbrances not revealed by public records and for encumbrances attaching or created after the date the policy issued.

¶7 The Campbells sued Ticor for damages and declaratory relief. They alleged breach of the duties to defend and

indemnify, bad faith, and violation of Washington's Consumer Protection Act, chapter 19.86 RCW. Before the Stevens County Superior Court, the Campbells moved for summary judgment and Ticor brought a cross-motion for summary judgment. The trial court granted Ticor's motion, reasoning that the Campbells's claim was clearly not covered on the face of the title policy so Ticor owed no duty to defend the Campbells against Edwards's suit. The Court of Appeals affirmed in an unpublished opinion noted at 139 Wn. App. 1033 (2007). We granted the Campbells's petition for review at 164 Wn.2d 1001 (2008).

## ANALYSIS

¶8 We review an order of summary judgment de novo. Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

¶9 The provisions governing title insurance are found within the general title of the Revised Code of Washington dealing with insurance, Title 48 RCW. *See* ch. 48.29 RCW. Thus, the business of providing title insurance falls under the purview of the insurance commissioner. RCW 48.02.060(2) (conferring powers and duties upon the insurance commissioner, including the ability to enforce the provisions of Title 48 RCW). A "title policy" is "any written instrument, contract, or guarantee by means of which title insurance liability is assumed." RCW 48.29.010(3)(a). Chapter 48.29 RCW does not define "title insurance" itself, but it is generally understood as "[a]n agreement to indemnify against loss arising from a defect in title to real property, usu[ally] issued to the buyer of the property by the title company that conducted the title search." BLACK'S LAW DICTIONARY 819 (8th ed. 2004). Title insurance "characteristically combines search and disclosure with insurance protection in a single operation." *Shotwell v. Transamerica Title Ins. Co.*, 16 Wn. App. 627, 631, 558 P.2d 1359 (1976), *aff'd*, 91 Wn.2d 161, 588 P.2d 208 (1978).

¶10 Because the business of title insurance is governed by Title 48 RCW, it "is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW 48.01.030. This court has suggested that the duties outlined in RCW 48.01.030 help inform an insurer's duty to defend. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386-89, 715 P.2d 1133 (1986). Our considerable body of law concerning an insurer's duty to defend therefore applies.

¶11 The duty to defend is broader than the duty to indemnify. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). "[T]he duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint, whereas the duty to indemnify exists only if the policy *actually covers* the insured's liability." *Id.* at 53. An insurer must defend unless it is clear from the face of the complaint that the claim is not covered by the applicable policy. *Id.* "[I]f it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer *must* investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." *Id.* "Where an insurer is unconvinced of its duty to defend, it may defend under a reservation of rights. Under a reservation of rights defense, ' "the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay." ' " *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 914, 169 P.3d 1 (2007) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 761, 58 P.3d 276 (2002) (quoting *Kirk v. Mount Airy Ins. Co.*, 134 Wn.2d 558, 563 n.3, 951 P.2d 1124 (1998))). Generally, an insurer who reserves rights may bring a timely declaratory judgment action to determine coverage. *Truck Ins.*, 147 Wn.2d at 761.

¶12 The question here is whether the allegations raised in Edwards's complaint were conceivably covered under the Ticor policy. In particular, the allegations affecting the Campbells's property concerned reformation of the

deed to lot A to accommodate lot C's pedestrian easement. Because the material facts are undisputed, the parties agree this is an issue of policy interpretation.

¶13 Construction of an insurance contract is a question of law. In interpreting an insurance contract, we look to the intent of the parties, which is ascertained from the language of the contract. *Tsapralis v. Pub. Employees Mut. Cas. Co.*, 77 Wn.2d 581, 582, 464 P.2d 421 (1970). "Construction which contradicts the general purpose of the contract or results in hardship or absurdity is presumed to be unintended by the parties." *Nautilus, Inc. v. Transamerica Title Ins. Co. of Wash.*, 13 Wn. App. 345, 349, 534 P.2d 1388 (1975). Language in an insurance contract is to be given its ordinary meaning, and courts should read the policy as the average person purchasing insurance would. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000).

¶14 We strictly and narrowly construe insurance policy exclusions. *See id.* Ticor denied the Campbells's claim based on two exclusions in the policy. First, the insurance contract at issue here excludes easements not disclosed by the public records. Ticor argues that the existence of the easement was not revealed in the public records pertaining to lot A, which was the property subject to Ticor's title search. The Campbells argue, on the other hand, that the existence of the easement was disclosed by public records.

¶15 Initially, the Campbells's point is well-taken. Because lot A arose from a subdivided parcel of land, it is reasonable to expect that the title search would include review of the subdivision records; this would have revealed the existence of the easement. However, even assuming Ticor reviewed public records for the lots as originally subdivided in 1995 along with the grant of an easement in 1996, the easement never affected lot A, nor was it intended to do so. *Compare* Clerk's Papers (CP) at 40-42 *with* CP at

63.[1] Thus, recognizing that the "public records" include more than the specific records for lot A does not establish coverage under the policy because the easement did not affect lot A. It is unreasonable to interpret the policy's language as covering *any* easement disclosed by public record, even those that do not affect the title at issue. *Cf. Lombardo v. Pierson*, 121 Wn.2d 577, 582, 852 P.2d 308 (1993) (rejecting the petitioner's argument that "a title company must disclose all recorded documents, regardless of whether they implicate title"). Reading the plain language of the title policy's exclusions, the fact that no record here showed any easement affecting lot A undermines the Campbells's duty to defend claim.

¶16 Second, Ticor relies on an exclusion for "[d]efects, liens, encumbrances, adverse claims or other matters . . . attaching or created subsequent to Date of Policy." CP at 55. This exclusion is relevant because the easement dispute arose after the date of the policy, once a survey revealed that the property line between lots A and B ran through the Gromo house and the easement was intended to run along that property line. Thus, if Edwards's reformation claim is successful, it will be because of what the later-conducted survey revealed—not because of anything that was disclosed in the public records at the time the policy was issued.

¶17 The Campbells argue that Ticor's position is "not that the 'Declaration of Pedestrian Easement' itself was not 'disclosed by the public record' as it clearly was, but that the possibility that the easement might affect the subject property was not 'disclosed' on its face." Appellant's Reply Br. at 5. This situation, argue the Campbells, is precisely what title insurance is supposed to protect against. *Id.* Stated differently, the Campbells's argument is that the legal effect of an easement need not be disclosed by the

---

[1] CP at 40-42 shows that the Vickerys did not and did not intend to burden lot A when they granted the easement. CP at 63 is a diagram of the subdivided parcel that Ticor attached to the title policy. The diagram shows the easement as the Vickerys intended: running adjacent to lot A.

public records so long as the easement itself is disclosed because title insurance does not exclude coverage for the subsequently realized legal effect of an easement.

¶18 The Campbells's argument has some appeal, but followed to its logical conclusion it would render Ticor's policy exclusions meaningless. For example, we consider a scenario where a title insurance policy shows property lines at the time the policy is issued. Later it is revealed by a survey that the lines were mistakenly drawn. Although the boundaries themselves were disclosed by public record, their legal effect was not. Under the Campbells's argument, there would be coverage under the title policy even though the policy excluded property disputes arising from surveys postdating the issuance of the insurance policy. This is not a fair reading of the policy. *Nautilus, Inc.*, 13 Wn. App. at 349 (an insurance contract will not be construed so that its general purpose is contradicted or a hardship or absurdity results). Here, at the time the easement was created—and at the time the policy was issued—the easement disclosed by the public records clearly did not affect lot A.

¶19 The Campbells also argue that Edwards's "complaint necessarily alleges that the recorded easement does burden the Campbell-Fereira property, otherwise, there would be no basis for seeking any relief against Campbell-Fereira or their property." Pet. for Review at 5. This does not follow. Edwards's allegation is that the Vickerys intended to provide lot C a pedestrian easement to Deer Lake. CP at 17. If he is successful in reforming the Campbells's deed, it will simply mean that a court subsequently determined that the Vickerys's intent is best effectuated by burdening the Campbells's land. *See Keierleber v. Botting*, 77 Wn.2d 711, 716, 466 P.2d 141 (1970) (noting that "a writing may be reformed to truly express the original intention of the parties to the transaction"). It will not mean that the original grant of easement disclosed a burden on the Campbells's land that is covered by the title policy. Accordingly, we hold that Ticor owed no duty to defend where the public records did not disclose an easement affecting title to the Campbells's property.

## CONCLUSION

¶20 While we would expect a title insurer to review public records of a parcel from which a subdivided lot originates, in this case such review would not have disclosed an easement that affected the Campbells's land. The result of Edwards's suit may be a reformation of the Campbells's deed resulting in a burden on their land, but that potential outcome is not covered by the title insurance policy the Campbells purchased from Ticor. The policy plainly excludes easements not disclosed by the public record or arising after the date the policy issues. Accordingly, there is no conceivable coverage of the Campbells's claims and Ticor owes no duty to defend. We affirm the Court of Appeals.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.