# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MAIN STREET LTD PARTNERS, aka Main Street Partners, | No. 57786-1-II |
| Appellant, | |
| v. | |
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, C.J. — Main Street Ltd. Partners, a bar and restaurant in Vancouver, held title to a five-foot strip of property that it used for garbage access and as a fire exit (Disputed Property). Main Street insured title to the property with a title insurance policy underwritten by Commonwealth Land Title Insurance Co. When a third party, Clark County Public Transportation Benefit Area Authority (C-Tran), blocked Main Street's physical access to the property and asserted ownership, Main Street requested coverage under the policy from Commonwealth to establish Main Street's rights to the property. Commonwealth initially accepted coverage and retained counsel for Main Street.

Soon thereafter, Commonwealth discovered that Main Street had clean title to the property as described under the policy and discontinued coverage, unless and until C-Tran sought to legally extinguish Main Street's title. Main Street retained private counsel and sued C-Tran to quiet title

to the property. C-Tran counterclaimed for quiet title and, in the alternative, adverse possession. Main Street tendered defense of C-Tran's counterclaim to Commonwealth. Commonwealth accepted the tender to defend against C-Tran's quiet title claim, but declined to provide coverage for C-Tran's adverse possession claim, contending that it was expressly excepted under the policy. Main Street sued Commonwealth for breach of contract, bad faith, and unfair business practices under the Insurance Fair Conduct Act[1] (IFCA).

Commonwealth moved for summary judgment dismissal of Main Street's claims. The trial court found that Commonwealth had not breached the policy because it had no duty to litigate and affirmatively establish title prior to C-Tran's counterclaim for quiet title and had no duty to defend against C-Tran's adverse possession claim. The court granted Commonwealth's motion for summary judgment and dismissed all of Main Street's claims with prejudice.

Main Street now appeals, arguing that Commonwealth had a duty to establish title through litigation against a third party when title was vested as insured. Additionally, Main Street contends that Commonwealth had a duty to defend against C-Tran's adverse possession claim. Commonwealth responds that express language of the policy makes clear that Commonwealth did not have a duty to initiate litigation to establish title nor did it have a duty to defend against C-Tran's adverse possession claim.

We agree with Commonwealth and affirm the trial court's order on summary judgment dismissing Main Street's claims.

---

[1] LAWS OF 2007, ch. 498.

FACTS

I. Underlying Property Dispute

The dispute between Main Street and Commonwealth involves a portion of a piece of property that Main Street purchased in 1994. Main Street's property included an undivided half interest in a five-foot strip of property on the adjacent property block. Main Street additionally had an easement for ingress, light, and air across the Disputed Property. Main Street insured title to the property with a policy underwritten by Commonwealth. Main Street leased the property to a third party who used it as a nightclub. During that time, the nightclub used the Disputed Property for garbage access and as a fire exit. According to Main Street, the Disputed Property was "used by the nightclub for a secondary and necessary access" to the Property. Corrected Br. of Appellant at 4.

C-Tran owned the remaining undivided half interest in the Disputed Property. Main Street executed an easement agreement with C-Tran in 2008 that included a description of Main Street's interest in the Disputed Property. Prior to 2015, both parties used the Disputed Property without conflict. Then, in 2015, C-Tran began constructing a transit project across the Disputed Property. At that time, C-Tran physically blocked Main Street's access to the Disputed Property.

In communications between C-Tran and Main Street, C-Tran claimed that it exclusively owned the Disputed Property. However, C-Tran did not take any legal action to establish title to the Disputed Property during this dispute. Because C-Tran blocked Main Street's access to the disputed property, thereby obstructing the nightclub's only alternative exit, the City of Vancouver deemed the nightclub to be unsafe and shut it down.

In 2016, Main Street tendered a claim to Commonwealth, requesting coverage of its dispute with C-Tran. Because C-Tran claimed that it had superior ownership rights to Main Street due to C-Tran's alleged purchase of the Disputed Property in 1984, Main Street requested coverage to prove that its ownership rights were superior.

In January 2017, Commonwealth accepted coverage of the claim, stating "according to the investigation by [Commonwealth], title to the Disputed Land is not vested as insured by the Policy and the claim is accepted on this ground." Clerk's Papers (CP) at 83. Commonwealth advised Main Street that it was evaluating its options and continuing to investigate in order to resolve the matter according to the policy. Soon thereafter, Commonwealth retained counsel to "represent [Main Street's] interests to establish vesting in a portion of [the Disputed Property]." *Id.* at 85. In March 2017, Commonwealth sent a letter to Main Street, reaffirming acceptance of the claim related to C-Tran's challenge to Main Street's title. In the letter, Commonwealth specifically expressed that it "retained [counsel] . . . , on [Main Street's] behalf, to file a complaint and pursue litigation with respect to [Main Street's] right to the Disputed Land." *Id.* at 91. However, no complaint was ever filed.

At some point thereafter, Commonwealth discovered in its investigation of the public record that Main Street did have an undivided half interest in the Disputed Property. As such, Commonwealth believed that title to the Disputed Property was vested in Main Street as described in the policy. Commonwealth verified this finding by retaining an independent title examiner expert, who confirmed that title was properly vested in Main Street. As a result, in June 2017, Commonwealth informed Main Street that the title was vested as insured and that Commonwealth therefore had no further obligation to Main Street at that time.

As an accommodation, Commonwealth offered to have its retained counsel attend a mediation and represent Main Street if Main Street decided to mediate with C-Tran to reach a global settlement. However, Commonwealth specifically reminded Main Street that if Main Street decided to forgo mediation and instead elect to sue, then it would need to retain separate independent legal counsel. Commonwealth maintained that it had no further obligations to Main Street unless and until C-Tran filed an action to divest Main Street of the half fee title to the Disputed Property.

In January 2018, Main Street retained private counsel and filed an action to quiet title against C-Tran in the Disputed Property. Main Street additionally sought to eject C-Tran and recover damages. Specifically, Main Street brought claims for inverse condemnation, interference with easement, quiet title, ejectment, and injunctive relief. In response, C-Tran counterclaimed for quiet title and adverse possession.

Main Street promptly tendered a claim for defense of C-Tran's counterclaims to Commonwealth. Commonwealth accepted coverage in part, agreeing that it had a duty to defend Main Street against C-Tran's quiet title claim under the policy "to the extent that C-Tran claim[ed] that Main Street [did] not have a [half] interest in Disputed Land based on recorded documents in the public record." *Id.* at 123. However, Commonwealth declined to defend Main Street against C-Tran's adverse possession claim, contending that the claim was excepted from coverage under the policy.

Commonwealth assigned counsel to Main Street to represent its interests in the quiet title counterclaim. However, Main Street continued to employ private counsel to support, monitor, and report on the defense of the quiet title claim. Main Street also continued to employ private counsel

to represent it in the adverse possession counterclaim. Ultimately, Main Street and C-Tran reached a settlement agreement that resolved the title issue and required C-Tran to compensate Main Street.

## II. MOTION FOR SUMMARY JUDGMENT

Soon after reaching a settlement with C-Tran, Main Street brought suit against Commonwealth, asserting claims for: (1) breach of contract; (2) bad faith; and (3) unfair business practices under IFCA. Main Street's primary argument was that Commonwealth breached its duty to defend title under the terms of the policy despite clear obligations to provide such coverage. Main Street also argued that actual damages included the attorney fees it incurred by retaining private counsel to litigate its suit against C-Tran and against C-Tran's counterclaims thereafter.

In response, Commonwealth filed a motion for summary judgment to dismiss all of Main Street's claims. In its motion for summary judgment, Commonwealth submitted the declaration of J. Bushnell Nielsen, a professional with 41 years of work experience in and related to the land title insurance industry. Main Street moved to strike Nielsen's declaration, arguing that it was impermissible expert testimony because Nielsen allegedly opined on his interpretation of the terms of the policy. The trial court denied Main Street's motion to strike and reviewed the declaration in its consideration of Commonwealth's motion for summary judgment.

Ultimately, the trial court granted summary judgment and dismissed all of Main Street's claims with prejudice. In its written order, the court stated that it reviewed Nielsen's declaration, in addition to other evidence. In its limited reasoning, the court explained that summary judgment depended on, "under the narrow provisions of the policy[,] whether [Commonwealth] performed or whether there[ is] a colorable claim for breach or IFCA or other relief." Rep. of Proc. (RP) at 34. The court also stated that "the essence of the title insurance is to guarantee the quality of the

6

title, the absolute quality of that title, and to defend against any legal or equitable claims on that title which would deprive or divest the insured of any portion of that titled property." *Id.* at 33-34.

Main Street now appeals, arguing that the trial court erred in granting Commonwealth's summary judgment motion and dismissing Main Street's claims based on the findings that (1) Commonwealth had no duty to establish title through litigation when C-Tran excluded Main Street from the Disputed Property; and (2) Commonwealth had no duty to defend the adverse possession counterclaim. Main Street also assigns error to the court's dismissal of its bad faith and IFCA claims, as well as the denial to strike Nielsen's declaration and the denial of attorney fees.

## ANALYSIS

We review a summary judgment order de novo and engage in "the same inquiry as the trial court." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). However, we will "consider only the issues and evidence the parties called to the trial court's attention on the motion for summary judgment." *Hiesterman v. Dep't of Health*, 24 Wn. App. 2d 907, 913, 524 P.3d 693 (2022), *review denied*, 1 Wn.3d 1020 (2023).

### I. DUTY TO ESTABLISH TITLE

Main Street argues that it is undisputed that C-Tran's contention that it was the sole owner of the disputed property gave rise to Commonwealth's duties under section 4(b) of the policy prior to the litigation between Main Street and C-Tran. Main Street argues that when Commonwealth retained counsel to represent Main Street and establish title, Commonwealth effectively pursued litigation, thereby exercising its rights under section 4(b). Main Street also argues that if

Commonwealth makes an exercise of its rights under section 4(b), then according to the policy, Commonwealth must pursue its elected choice of conduct under the policy diligently. Thus, Main Street contends that when Commonwealth discontinued coverage after confirming that title was vested in Main Street as insured, Commonwealth breached its duty to pursue its chosen course under the policy diligently.

Commonwealth responds that under the express language of the policy, it had no duty to prosecute a lawsuit against C-Tran to quiet title because there was no challenge to Main Street's title at that time. Commonwealth states that Main Street incorrectly characterizes section 4(b) because that section is not an affirmative duty, but rather is simply one option that Commonwealth may choose to exercise when establishing title to the estate as insured. Commonwealth further articulates that the express language of section 4(b) allows it to bring legal action but imposes no obligation to do so. Commonwealth also emphasizes that once it learned that there was no defect in title, it had no further obligation to Main Street at that time under the express language of the policy.

Commonwealth did not have a duty under the express language of the policy to initiate litigation. Moreover, the title to the Disputed Property was vested in Main Street as insured, so Commonwealth did not have any ongoing obligations to Main Street at that time. Accordingly, we hold that the trial court did not err in granting summary judgment to Commonwealth and dismissing Main Street's claims on the ground that Commonwealth had no contractual duty to establish title against the competing ownership claim of C-Tran prior to the commencement of any legal action.

A. Legal Principles

"Insurance policies are construed as contracts, so policy terms are interpreted according to basic contract principles." *Allemand v. State Farm Ins. Co.*, 160 Wn. App. 365, 368, 248 P.3d 111 (2011). Generally, "[a] breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

Construction of an insurance policy is a question of law that we review de novo. *Woo*, 161 Wn.2d at 52. We consider the parties' intent as derived from the plain language of the policy. *Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 472, 209 P.3d 859 (2009). We read the policy as would the average person purchasing insurance. *Id.* Clear and unambiguous language is given its plain meaning, but ambiguities in an insurance policy will be construed against the insurer. *Robbins v. Mason County Title Ins. Co.*, 195 Wn.2d 618, 626, 462 P.3d 430 (2020). Coverage exclusions are strictly and narrowly construed. *Campbell*, 166 Wn.2d at 472. Additionally, " '[c]onstruction which contradicts the general purpose of the contract or results in hardship or absurdity is presumed to be unintended by the parties.' " *Id.* (quoting *Nautilus, Inc. v. Transamerica Title Ins. Co. of Wash.*, 13 Wn. App. 345, 349, 534 P.2d 1388 (1975)).

Initiating litigation is generally limited to filing a complaint and associated actions. *See, e.g.*, RCW 26.51.020 (defining litigation for the purposes of abusive litigation);[2,3] CR 3(a).[4] Although there are cases that stand for the contention that initiating litigation extends to actions taken in anticipation of potential legal proceedings, they generally relate only to the protection of work products. *See Harris v. Drake*, 116 Wn. App. 261, 65 P.3d 350 (2003), *aff'd*, 152 Wn.2d 480 (2004); *Soter v. Cowles Pub. Co.*, 162 Wn.2d 716, 174 P.3d 60 (2007) (plurality opinion); *In re the Matter of Firestorm 1991*, 129 Wn.2d 130, 916 P.2d 411 (1996); *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 706 P.2d 212 (1985); *Dawson v. Daly*, 120 Wn.2d 782, 845 P.2d 995 (1993).

The language of the policy gives rise to the duties and rights that Commonwealth has as to its insured, Main Street. Section 4(b) of the policy here states that:

> [Commonwealth] shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured.

---

[2] We cite to the current version of RCW 26.51.020 because the amendments made in 2021 do not impact our analysis. LAWS OF 2021, ch. 215, § 143; LAWS OF 2021, ch. 65, § 103.

[3] RCW 26.51.020(3) defines litigation as
> any kind of legal action or proceeding including, but not limited to: (a) Filing a summons, complaint, demand, or petition; (b) serving a summons, complaint, demand, or petition, regardless of whether it has been filed; (c) filing a motion, notice of court date, note for motion docket, or order to appear; (d) serving a motion, notice of court date, note for motion docket, or order to appear, regardless of whether it has been filed or scheduled; (e) filing a subpoena, subpoena duces tecum, request for interrogatories, request for production, notice of deposition, or other discovery request; or (f) serving a subpoena, subpoena duces tecum, request for interrogatories, request for production, notice of deposition, or other discovery request.

[4] CR 3(a) states that "a civil action is commenced by service of a copy of a summons together with a copy of a complaint, as provided in rule 4 or by filing a complaint."

CP at 61. Additionally, Section 9(a) of the policy makes clear that:

> If [Commonwealth] establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

*Id.* at 64. The two sections, when read together, outline some of the rights Commonwealth has under the policy and when those rights can be considered fully performed, if exercised.

## B. Application

Main Street argues that when Commonwealth retained counsel upon initially accepting coverage, Commonwealth effectively exercised its option to file a complaint and pursue the litigation necessary to cure the title issue. Main Street contends that when Commonwealth discovered that title was vested in Main Street as insured and ended coverage of the issue, it breached its duty to resolve the matter as it failed to diligently pursue litigation and establish title.

Main Street further argues that Commonwealth's contention that it fully discharged its duties under section 4(b) by " 'establishing the title,' " is erroneous. Corrected Br. of Appellant at 18 (quoting CP at 143). Main Street maintains that the phrase " 'to establish title' " is not defined within the policy itself and is therefore ambiguous. *Id.* As a result, Main Street argues, we should look to the plain and ordinary meaning per the rules of contract interpretation and should construe the term in favor of Main Street. When interpreted that way, "to establish title" should be read to mean gaining C-Tran's "recognition or acceptance of Main Street's rights in the Disputed Property." *Id.* at 19. Thus, Main Street argues that as Commonwealth did not provide evidence that Commonwealth communicated the " 'establishment of title' " to C-Tran, Commonwealth breached its duties to Main Street. *Id.* at 20.

11

Commonwealth responds that it did not have any duty to pursue litigation to establish title as that duty only arises under the policy when Commonwealth exercises its right to initiate litigation. Commonwealth emphasizes that because Commonwealth's retained counsel for Main Street never filed suit, Commonwealth therefore did not exercise this right and thus had no obligation to diligently pursue a lawsuit against C-Tran under the policy. Commonwealth further maintains that the phrase " 'to establish title' " is defined in the policy, which states that Commonwealth covers loss or damage " 'sustained or incurred by the insured by reason of . . . [t]itle to the estate or interest described in [the policy] being vested other than as stated therein.' " *Id.* at 25 (some alterations in original) (boldface and underline omitted) (quoting CP at 56). Therefore, Commonwealth contends that the policy unambiguously permits Commonwealth "to establish title only where it is not vested as insured." *Id.* (underline omitted).

Commonwealth maintains that because it discovered that title was vested in Main Street as insured, Commonwealth had no further duty to Main Street, as no other party had sought to legally extinguish Main Street's title at that point. Commonwealth is correct. The language of the policy is unambiguous. Moreover, because Commonwealth had not yet initiated litigation when it discontinued its coverage of Main Street's claim, Commonwealth did not owe any further duty to Main Street. Specifically, Commonwealth did not owe a duty to "establish title" before C-Tran brought suit to legally extinguish Main Street's title.

Under the commonly understood definitions of litigation as used in statute, court rules, and case law, initiating litigation generally requires a service of process or filing of complaint. Here, Commonwealth's retained counsel for Main Street had not filed a complaint or initiated any

12

proceedings prior to Commonwealth's discontinuation of coverage. Thus, Commonwealth did not exercise its right to litigate and therefore had no duty to pursue litigation diligently.

Additionally, under the express language of the policy, Commonwealth did establish title. As defined in both section 4(b) and the cover page of the policy, Commonwealth's duties only arise to cover loss or damage "sustained or incurred by the insured by reason of: . . . [t]itle to the estate or interest described in [the policy] being vested other than as stated therein," and Commonwealth has the right to undertake any actions necessary to establish title as insured. CP at 56. When Commonwealth discovered that title was vested as insured and confirmed the same with a title examiner expert, it was acting within its rights under the policy. Additionally, by doing so, Commonwealth did "establish title" under the policy because it established that title was vested as described in the policy. Without any pending legal action against that title, there was no defect in title.

Similarly, under the express language of section 9(a) of the policy, when Commonwealth confirmed that title was vested as insured, it had fully performed any obligations to Main Street and had no further duties to Main Street at that time. Until C-Tran counterclaimed for quiet title, there was no defect in title and, therefore, the policy was not implicated. Thus, Commonwealth

13

had no duty to establish title, and the trial court did not err in granting summary judgment and dismissing Main Street's breach of contract claim. [5]

## II. Duty to Defend Adverse Possession Counterclaim

Main Street argues that there is no exception in the policy for adverse possession claims like the one made by C-Tran. Main Street also contends that the persons in possession exception in the policy would not apply to these kinds of adverse possession claims when strictly construed from the point of view of the average policy holder. Main Street argues that because C-Tran's other counterclaim alleged that C-Tran's interest was in the public record as of 1984, C-Tran's adverse possession counterclaim also included that allegation. Therefore, Main Street contends, C-Tran's adverse possession claim does not fall under the exception in the policy and thus implicates Commonwealth's duty to defend. Main Street specifically argues that "because [C-Tran's] interest was recorded at the time of policy issuance, the adverse possession claim was just as subject to the duty to defend as the quiet title counterclaim." Corrected Br. of Appellant at 33.

Commonwealth responds that adverse possession claims are expressly excepted from coverage under "Exception 2." Br. of Resp't at 3. Exception 2 specifically excepts from coverage "[a]ny facts, rights, interests or claims which are not shown by the public records but which could

---

[5] Main Street also argues that coverage in this case includes the right to physical access of the Disputed Property as opposed to merely a right of legal access. In this vein, Main Street is suggesting that C-Tran's physical obstruction of the Disputed Property, done outside of a claim of title, is covered under a title insurance policy. Main Street does not cite any authority to support this contention. Moreover, it is clear that Main Street understood C-Tran's physical obstruction of the Disputed Property to be an action of trespass, separate from any issue with title, as Main Street brought a claim for ejectment against C-Tran in Main Street's complaint against C-Tran. Commonwealth had no duty under the Policy to provide coverage for the right to *physical* access— any duty it did have regarding a right to access refers only to a *legal* right of access. Main Street does not dispute that Main Street had the right to legally access the Disputed Property, as such, we need not address this argument.

be ascertained by an inspection of the land or which may be asserted by persons in possession, or claiming to be in possession thereof." CP at 69. Commonwealth states that this is standard language that generally excepts adverse possession claims from coverage. Commonwealth articulates that because C-Tran pleaded its adverse possession claim in the alternative to the quiet title claim and based its adverse possession claim on its use alone, that claim was clearly excepted from coverage under Exception 2 and did not give rise to Commonwealth's duty to defend. We agree with Commonwealth. As C-Tran's adverse possession claim was based solely on its use, with no reference to title or deed, it fell under Exception 2 and therefore Commonwealth had no duty to defend this claim.

We hold that the trial court did not err in granting summary judgment to Commonwealth and dismissing Main Street's claims on the grounds that Commonwealth had no contractual duty to defend against C-Tran's adverse possession counterclaim. Commonwealth did not have a duty to defend because the adverse possession claim was based solely on C-Tran's use and therefore was expressly excepted from coverage under the policy.

A. Legal Principles

Title insurance is " '[a]n agreement to indemnify against loss arising from a defect in title to real property, usu[ally] issued to the buyer of the property by the title company that conducted the title search.' " *Campbell*, 166 Wn.2d at 470 (alteration in original) (quoting BLACK'S LAW DICTIONARY 819 (8th ed. 2004)). Per RCW 48.01.020, all insurance and insurance transactions in Washington or affecting subjects located in Washington, are governed under Title 48 RCW. Thus, title insurance falls within the scope of Title 48 RCW. *See* ch. 48.29 RCW (pertaining to title insurers); *Campbell*, 166 Wn.2d at 470.

15

Under RCW 48.01.030, "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." The duties in this provision inform an insurer's duty to defend, which applies to the title insurance policy in this case. *See Campbell*, 166 Wn.2d at 471.

It is well established that the duty to defend is both different and broader than the duty to indemnify. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). Whereas " 'the duty to indemnify exists only if the policy *actually covers* the insured's liability,' " the duty to defend is triggered if the complaint contains allegations that are "*conceivably cover[ed]*." *Campbell*, 166 Wn.2d at 471 (quoting *Woo*, 161 Wn.2d at 52).

"The duty to defend 'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.' " *Am. Best Food*, 168 Wn.2d at 404 (internal quotation marks omitted) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002)). An insurer must defend if a claim would be covered under any reasonable interpretation of the facts or law. *Id.* at 405. Although the duty to defend is broad, it is not unlimited. *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 879, 297 P.3d 688 (2013). The insurer does not owe the insured a duty to defend if it is clear from the face of the complaint that the claims do not fall within the policy. *Robbins*, 195 Wn.2d at 641.

To determine whether the duty to defend exists, the insurer limits its consideration to the four corners of the insurance contract plus the four corners of the underlying complaint, together described as the "eight corners." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014). An insurer also may not give itself the benefit of the doubt in determining whether a

claim is covered, nor may it rely on an equivocal interpretation of the law when denying its duty to defend a claim. *Am. Best Food*, 168 Wn.2d at 414.

If any allegation in a complaint could result in a covered liability, even where the complaint raises other claims that are not covered, the insurer must defend the conceivably covered claim. *Webb v. USAA Cas. Ins. Co.*, 12 Wn. App. 2d 433, 445-46, 457 P.3d 1258 (2020). If it is unclear whether the duty to defend exists, the insurer may defend under a reservation of rights without breaching the contract while the question of coverage is resolved in a separate action. *Am. Best Food*, 168 Wn.2d at 405.

B. Application

Here, C-Tran's counterclaim for adverse possession was pleaded in the alternative to its quiet title claim. Additionally, C-Tran based its adverse possession claim solely on the contention that "[its] operation of a transit center [across the Disputed Property from 1984 through 2004] constituted exclusive, actual and uninterrupted, open and notorious, and hostile possession for over ten years." CP at 109. C-Tran did not premise its adverse possession claim on any allegation related to title or the public record. According to the specific language of Exception 2 in the policy, this claim would constitute a claim "not shown by the public records but . . . which may be asserted by persons in possession, or claiming to be in possession thereof." *Id.* at 69.

Per the express language of the policy, C-Tran's adverse possession claim would not be subject to Commonwealth's duty to defend. This is further supported by the fact that Washington courts often hold that when similar exceptions to Exception 2 exist in a title insurance policy, adverse possession claims do not give rise to the insurer's duty to defend. *See, e.g.*, *Dickins v. Stiles*, 81 Wn. App. 670, 916 P.2d 435 (1996); *Haley v. Hume*, 10 Wn. App. 2d 484, 448 P.3d 803

(2019). As such, Commonwealth had no duty to defend against the adverse possession claim, and the trial court did not err in granting summary judgment and dismissing Main Street's claims as they relate to C-Tran's adverse possession counterclaim.

Therefore, we hold that the trial court did not err in granting Commonwealth's motion for summary judgment and dismissing Main Street's claims for breach of contract, bad faith, and unfair business practices, because Commonwealth had no duty to litigate and establish title prior to C-Tran filing legal action to extinguish that title, and similarly had no duty to defend against C-Tran's adverse possession counterclaim.

CONCLUSION

We affirm the trial court's grant of summary judgment and the dismissal of Main Street's claims for breach of contract, bad faith, and unfair business practices under IFCA.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

LEE, J.

GLASGOW, J.