# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SHELLEY S. HAWKINS, individually and as assignee of Edwin G. Miguel, | No. 85400-3-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| ACE AMERICAN INSURANCE COMPANY, a foreign insurer, | |
| Appellant, | |
| EDWIN G. MIGUEL; FATEMAH S. ALSUWAIDAN; and DOES AND DOE INSURANCE COMPANIES 1-5, | |
| Defendants. | |

BIRK, J. — Following initiation of a motor vehicle lawsuit by Shelley Hawkins against Edwin Miguel and others, Hawkins and Miguel entered into a covenant judgment settlement, which established Miguel's liability and assigned to Hawkins Miguel's bad faith claims against his employer's insurer, ACE American Insurance Company. Hawkins obtained an order ruling the settlement amount with Miguel was reasonable, without notice to ACE, and later obtained judgment on the assigned claims. We conclude ACE is not bound by the reasonableness determination obtained without notice and without its having an opportunity to be heard, and for that reason we reverse in part and remand for further proceedings. However, we affirm the superior court's order on summary judgment to the extent

it ruled that ACE is liable for breach of contract, failure to act in good faith, and violation of the Insurance Fair Conduct Act (IFCA), RCW 48.30.015.

I

On November 16, 2016, Hawkins was driving her vehicle when she was rear ended by Fatemah Alsuwaidan. Moments later, Miguel's work van rear ended Alsuwaidan's vehicle, causing a second collision with Hawkins's vehicle. At the time of the collision, Miguel worked for Sears Holdings Management Corporation and was insured under a liability insurance policy issued to Sears by ACE.

On November 7, 2017, Hawkins's counsel sent a claims examiner at Sedgwick Claims Management Services Inc.—which managed claims for ACE on behalf of Sears—notice of representation of Hawkins in regard to the November 16, 2016 incident. On December 6, 2017, an adjuster called Miguel and documented that he had provided a statement and photographs of the collision. A different Sedgwick claims examiner sent a letter to Hawkins's counsel acknowledging his representation and requesting information to complete her investigation of the claim. On January 29, 2018, Hawkins sent a settlement demand. On April 25, 2018, Hawkins supplemented her demand with evidence of her 2017 earnings. Hawkins's counsel's correspondence indicates a different Sedgwick adjuster represented Alsuwaidan. ACE's claim file[1] describes an e-mail in which this Sedgwick adjuster on April 26, 2018, e-mailed Hawkins's counsel's

---

[1] The claim file notes were submitted to the trial court by ACE as an exhibit to its counsel's declaration, who described them under oath as "the claim notes maintained by ACE American Insurance Company in connection with [Hawkins's] claims against Edwin Miguel, produced by ACE in this matter."

office seeking additional information, copying the Sedgwick claims examiner representing Miguel. This entry is dated June 11, 2018. The record does not indicate clearly whether any other presuit settlement communications occurred.

On September 18, 2018, Hawkins's counsel signed a complaint for negligence alleging the collision and naming as defendants A&E Factory Services LLC, Sears, Alsuwaidan and her husband, and Miguel and his wife.[2] The complaint asserted negligence by Miguel and asserted he was acting within the scope of employment for A&E and/or for Sears. Hawkins later filed the complaint.

Miguel was served with the complaint on October 10, 2018. On October 12, 2018, a Sears general manager e-mailed that "a tech [at Sears] was served paper for an accident he was involved in over a year ago" and requested information on where to send the documents. On October 15, 2018, Sears filed for bankruptcy, which triggered an automatic stay of all claims against it. The parties do not contend that Sears's filing triggered an automatic stay of the claim against Miguel. On October 16, 2018, the documents Miguel provided to Sears were internally forwarded to a Sears claims manager. On November 9, 2018, now beyond the 20 days in which Miguel had to answer service of the lawsuit, CR 12(a)(1), the Sears claims manager forwarded the documents to Sedgwick. The Sears claims manager explained, "I somehow missed this in my email." On November 12, 2018, the documents were sent to the Sedgwick claims examiner

_____

[2] The complaint also named as defendants Jenni Wakida and her husband, alleging that Wakida caused an unrelated motor vehicle collision injuring Hawkins on January 6, 2017. The Wakida defendants were dismissed from the action on May 3, 2019, and no issue as to these defendants or that dismissal is raised in this appeal.

who had previously communicated with Hawkins's counsel. That day, the Sedgwick claims examiner replied, "I am no longer on that account," and to the extent of our record copied a supervisor "to assist."

The following day, on November 13, 2018, Hawkins filed a motion for an order of default against Miguel, which the superior court subsequently granted.[3] On December 11, 2018, an attorney at Williams, Kastner & Gibbs PLLC sent a message to Sears stating he had "accepted the assignment of this new matter in error" and the firm "cannot accept this or any other new matters at this time." The attorney further stated, erroneously, "[t]he Complaint has not yet been filed, however, so no immediate action needs [to be] taken." ACE's claim file adopted the view that no action needed to be taken on Sears files because of the bankruptcy stay.

On January 9, 2019, the United States Bankruptcy Court for the Southern District of New York issued an order extending the automatic stay to apply to Miguel and the other non-debtor parties in the case.[4] On January 22, 2019, Sears provided a copy of the stay extension order to Williams Kastner and asked that it file the notice with the superior court. Williams Kastner e-mailed Sears, again erroneously, that the "[c]omplaint was not actually filed with the court" and stated it "may be" that "once plaintiff's counsel learned of the bankruptcy, they opted not to actually file the suit." ACE recorded this belief in its claim file. Williams Kastner

---

[3] The motion and order also entered default as to the Sears defendants, who the parties do not dispute were at that time protected by the bankruptcy stay.

[4] During the stay, Miguel was "not required to submit any response, answer, or other pleadings in connection with the Action, and the Action may not continue against either any applicable Debtor or any applicable Non-Debtor Party."

did not file the notice with the court, but on January 24, 2019, it mailed the notice extending the automatic stay to Miguel to Hawkins's counsel. It captioned the notice using the caption of Hawkins's lawsuit, described Hawkins's counsel as "Attorneys for Plaintiff," and did not indicate a cause number. The notice stated Williams Kastner represented only "Defendant Sears, Roebuck and Co.," an entity that was not named as a party.

On April 25, 2019, in violation of the bankruptcy stay, Hawkins moved for an order of default and default judgment against Miguel. The record does not indicate Hawkins gave notice of the motion to Williams Kastner. Hawkins argued at the hearing that Miguel and his employer had not appeared in the action, which meant they were not entitled to notice under CR 55(a)(3). Hawkins included an April 23, 2019 declaration by her chiropractor Chris Rivera, DC, stating that as a result of the November 16, 2016 collision, Hawkins suffered permanent injuries and would not regain the full state of health enjoyed prior to the collision. Dr. Rivera stated Hawkins had incurred reasonable and necessary medical charges consisting of $5,266.00 incurred on November 16, 2016 for an emergency department visit with computerized tomography scans of her head and cervical spine, $760.00 charged the same day by Evergreen Emergency Services, and $17,111.32 charged by Dr. Rivera for chiropractic services starting on November 18, 2016, and running through June 30, 2017, totaling $23,137.32. Hawkins claimed lost income of $125,880.00 and past and future noneconomic damages totaling $250,000.00.

The superior court held a hearing on the motion for default and heard testimony from Hawkins regarding her injuries from the collision. When the superior court inquired whether the defendants had insurance, Hawkins's counsel answered in a manner that did not disclose his previous communications with Sedgwick or the bankruptcy stay he had received from Williams Kastner, instead alluding to the possibility of a coverage dispute:

> We are aware of one insurer, at least what I think is an insurer. But I'm getting mixed signals on whether there's actual coverage, so I really can't say that positively in the affirmative. And then two of these three defendants are confirmed—well, I can't say confirmed. No, they haven't appeared so I really have no idea at all from them from even an insurer.

The superior court entered an order of default and judgment for $399,297.32, plus statutory costs of $1,455.05, bearing interest at 7.50 percent.

On August 26, 2020, Hawkins's counsel sent a letter to Miguel informing him of the default judgment entered against him and advising that he owed the judgment, at that time totaling $440,827.61 with interest, but also now stating that his insurer should pay the judgment because it had committed bad faith. Hawkins's counsel stated in the letter,

> I can free you from this judgment and subpoena, however. This is the worst case of insurance bad faith conduct I have ever seen. Your insurer should have to pay, not you. Hopefully, the insurer and their lawyer will not recommend that you file a bankruptcy when the insurer should be obligated to pay for its gross negligence in mishandling the claim.
>
> I would like to discuss this with you. However, I cannot help you, and our offer to free you from paying this judgment is withdrawn, if you contact your insurance company.

After assisting Miguel in selecting an attorney, Hawkins's counsel e-mailed Miguel's counsel a draft settlement agreement with assignment of rights and covenants. Miguel agreed, among other things, to assign certain claims against ACE to Hawkins in exchange for Hawkins's agreement not to execute the default judgment against Miguel, then amounting to $443,323.00. Miguel's counsel e-mailed Hawkins's counsel the signed settlement agreement on October 9, 2020.

Attorney time records that Hawkins later filed in the superior court after being awarded attorney fees shed light on the next events. Hawkins hired Foster Garvey PC. On November 9, 2020, Foster Garvey reviewed "Sears documents and multiple docket filings." On November 12, 2020, Foster Garvey had a call with Hawkins's counsel after having researched extension of a bankruptcy stay to non-debtor parties. With Foster Garvey's assistance, Hawkins reached a stipulation with Sears, and on April 5, 2021, the bankruptcy court entered an order lifting the automatic bankruptcy stay as to Miguel.

With the stay lifted, on June 23, 2021, Miguel signed a new settlement agreement that Hawkins's counsel had previously sent Miguel's counsel. This agreement was similar to the first settlement agreement, except it increased the amount of the settlement from $443,323.00 to $1.5 million. The new agreement also provided for judgment interest at 12 percent. Hawkins filed a motion for a determination of reasonableness with respect to the June 23, 2021 settlement agreement and for judgment thereon. Hawkins relied on the same April 23, 2019 declaration by Dr. Rivera she had relied on two years earlier. However, Hawkins signed a new declaration in which she explained that her injuries had turned out to

7

be worse than she had envisioned when she obtained the default judgment. Although not indicating either supporting expert testimony or any new medical treatment since 2017, Hawkins alluded to the possibility of having "known effects" of a traumatic brain injury. Hawkins relied on a two page declaration by the attorney to whom her counsel had referred Miguel, who stated it is "not unusual for a traumatic brain injury (TBI) case in Washington to be resolved for well over $1 million," and that settlement of $1.5 million was reasonable. Hawkins acknowledged that she had not given notice of the hearing to any insurers.[5]

Meanwhile, ACE's claim file indicates it first took note of the lifting of the bankruptcy stay as to Miguel on July 2, 2021. That day, ACE documented a plan to contact defense counsel. On July 19, 2021, Williams Kastner filed a notice of appearance on behalf of Sears, Roebuck and Co., A&E, and Miguel and mailed a copy of the notice to Hawkins's counsel.[6]

On July 20, 2021, the superior court e-mailed a signed copy of the order on Hawkins's motion for determination of reasonableness to Hawkins and Williams Kastner. Entering the order on July 21, 2021, the superior court granted Hawkins's motion to find the settlement reasonable. On August 12, 2021, Hawkins and Miguel mailed ACE a 20 day presuit notice and purported opportunity to cure under

---

[5] Separately, Hawkins moved to vacate the order of default and default judgment against Alsuwaidan. Two days later, Hawkins filed a new motion for order of default against Alsuwaidan. She also moved to vacate the May 2, 2019 default order and default judgment against Miguel, which the superior court granted. On July 15, 2021, Hawkins moved for voluntary dismissal of A&E and Sears, which the superior court granted.

[6] Miguel's counsel subsequently e-mailed Williams Kastner asserting Miguel did not consent to its representation and requested that Williams Kastner withdraw its appearance on behalf of Miguel.

IFCA. Around the same time, Hawkins and Miguel agreed on a new interlineation to the settlement agreement, to clarify their intent concerning Miguel's right to receive damages obtained by Hawkins in pursuing the assigned claims. On September 2, 2021, the superior court entered a confession of judgment against Miguel for $1.5 million. Hawkins filed a corrected amended complaint, asserting claims against ACE for negligence, violation of IFCA, and breach of the duty of good faith, and on October 1, 2021, served ACE through the Office of the Insurance Commissioner.

Litigation between Hawkins and ACE followed. In responsive pleadings, ACE asserted, among other affirmative defenses, that Miguel violated the cooperation clause of the policy and "[s]uch acts forfeited coverage for the damages sought by [Hawkins]." Hawkins filed a motion for partial summary judgment against ACE seeking to establish coverage for Hawkins's judgment against Miguel, strike ACE's affirmative defenses, enter judgment against ACE on the amount of the covenant judgment, and find ACE liable for breach of contract, violation of IFCA, and failure to act in good faith.[7] ACE filed a CR 60 motion to

---

[7] The superior court briefly stayed its proceedings. ACE's parent company, Chubb, on October 7, 2022, filed a motion in the Sears bankruptcy seeking to void acts Hawkins had taken against Miguel during the pendency of the stay, as well as the subsequent June 23, 2021 settlement and the reasonableness determination. The bankruptcy court ruled that the default judgment and first settlement agreement were entered in violation of the automatic stay and were void ab initio, but the second settlement agreement, the reasonableness order, and the confession of judgment were not. Other than vacating the proceedings it found violated the bankruptcy stay, the court said it would "leave to the state court in Washington to assess all the parties' rights." The court said its ruling was "not to be read as an endorsement of any party's position or not in connection with other issues that might properly come before the Washington state court."

9

relieve Miguel and ACE from judgments and orders. In addition to seeking vacatur of the May 2, 2019 order of default which Hawkins had voluntarily vacated and the bankruptcy court had vacated as well, and the October 9, 2020 settlement that the bankruptcy court had vacated, ACE sought vacatur of Miguel's representation agreement with the attorney referred by Hawkins's counsel, the June 23, 2021 settlement, the reasonableness determination, and the later interlineated settlement agreement.

The superior court granted Hawkins's motion for partial summary judgment and denied ACE's CR 60 motion. In a May 3, 2023 order granting Hawkins's motion for partial summary judgment, the superior court concluded Hawkins's negligence claims and consent judgment against Miguel were covered by ACE's insurance policy, and Hawkins was entitled to the $1.5 million consent judgment plus interest. The superior court concluded that ACE as a matter of law breached the insurance policy, breached the duty of good faith, and violated IFCA. The court struck ACE's affirmative defense that Miguel failed to comply with the policy's conditions to the prejudice of ACE.[8] The superior court found that enhanced damages were appropriate under IFCA, and Hawkins was entitled to recover reasonable attorney fees and costs under Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 811 P.2d 673 (1991). In a May 3, 2023 judgment, after adding treble damages under IFCA, the court entered judgment for Hawkins against ACE in the amount of $5,443,200.00. Hawkins moved for attorney fees

---

[8] ACE does not assign error on appeal to the superior court's striking its affirmative defenses.

pursuant to the summary judgment order, and on May 23, 2023, the superior court entered judgment against ACE for $232,195.60. ACE appeals.[9]

II

ACE argues the superior court's imputation of the reasonableness determination to ACE violated ACE's right to due process because it was not given notice of the hearing.[10] We agree. We review claimed due process violations de novo. Post v. City of Tacoma, 167 Wn.2d 300, 308, 217 P.3d 1179 (2009).

Hawkins invokes the rule that a liability insurer who fails to defend is bound by a reasonable settlement made by the insured. It is well settled that "[w]hen the insurer had an opportunity to be involved in a settlement fixing its insured's liability, and that settlement is judged reasonable by a judge, then it is appropriate to use the fact of the settlement to establish liability and the amount of the settlement as the presumptive damage award for purposes of coverage." Mut. of Enumclaw Ins. Co. v. T & G Const., Inc., 165 Wn.2d 255, 267, 199 P.3d 376 (2008). The question here is what is meant by the insurer's having an "opportunity to be involved in a

---

[9] The parties do not dispute that the summary judgment order and resulting judgments disposed of fewer than all claims. The superior court certified its May 3, 2023 judgment under CR 54(b), and supported its certification with written findings. The parties do not dispute the appealability of the summary judgment order, and we agree the superior court's findings adequately indicate there existed "in fact some danger of hardship or injustice that will be alleviated by an immediate appeal." Fox v. Sunmaster Prods., Inc., 115 Wn.2d 498, 503, 798 P.2d 808 (1990). Thus, we accept review under RAP 2.2(d).

[10] Hawkins argues we should not consider ACE's due process argument because it was not raised in the trial court. However, in its October 10, 2022 response to Hawkins's motion for partial summary judgment, ACE argued that it was not bound by the reasonableness determination because it did not have notice of the hearing and the opportunity to intervene. ACE therefore raised the issue in the trial court.

11

settlement" for purposes of this rule. Id. Hawkins points to her service of process on Miguel, and his forwarding process to his employer and in turn ACE, as satisfying the requirement that ACE have the opportunity to participate in the litigation in order to be bound by Hawkins and Miguel's settlement. It is undisputed Hawkins and Miguel did not give ACE subsequent notice of the settlement, or of their intent to obtain a reasonableness determination, until after they had presented their motion and obtained the order.

The discussion in T & G started from the long-settled rule that " 'an insurer will be bound by the findings, conclusions and judgment entered in the action against the tortfeasor when it has notice and an opportunity to intervene in the underlying action.' " Id. at 263 (quoting Fisher v. Allstate Ins. Co., 136 Wn.2d 240, 246, 961 P.2d 350 (1998)). "The rule is that when an insurer has notice of an action against an insured, and is tendered an opportunity to defend, it is bound by the judgment therein upon the question of the insured's liability." East v. Fields, 42 Wn.2d 924, 925, 259 P.2d 639 (1953). The judgment is not conclusive as to the question of coverage because "the causes of action for tort liability and for indemnity liability are separate and distinct." Id. However, "the insurer is bound by any material *finding of fact* essential to the judgment of tort liability," including findings of fact that are "decisive of the question of the coverage." Id. at 926. In East, the insurer refused to defend an automobile injury claim based on a coverage exclusion. Id. at 925. When the subsequent liability judgment necessarily included a finding dispositive of the exclusion—there, that the vehicle owner occupied the

vehicle at the time of the collision—the court held this fact and the resulting judgment were binding on the insurer.[11]  Id. at 928.

In T & G, although the Supreme Court looked to its more recent decisions in underinsured motorist (UIM) cases,[12] it again applied the rule recognized in East

---

[11] Historically, courts have described this rule as a general principle of indemnity.  Coblentz v. Am. Sur. Co. of N.Y., 416 F.2d 1059, 1062-63 (5th Cir. 1969) ("Where either an indemnitor or liability insuror has notice of a proceeding against his indemnitee or insured, and is afforded an opportunity to appear and defend, a judgment rendered against the indemnitee or insured, in the absence of fraud or collusion, is conclusive against the indemnitor or insuror as to all material matters determined therein."); Butler Bros. v. Am. Fid. Co., 120 Minn. 157, 168, 139 N.W. 355 (1913) ("[W]here there is a trial and judgment in the action against the indemnitee, after notice to defend given to the indemnitor, the judgment is conclusive evidence that the indemnitee was liable, and as to the amount."); cf. United Servs. Auto. Ass'n v. Morris, 154 Ariz. 113, 120, 741 P.2d 246 (1987) ("[T]he indemnitor will be liable to the indemnitee to the extent that the indemnitee establishes that the settlement was reasonable and prudent under all the circumstances.").

[12] Washington, like other states, has extended the East rule to UIM insurance.  Fisher, 136 Wn.2d 246-47 (collecting cases) (citing Finney v. Farmers Ins. Co., 21 Wn. App. 601, 618, 586 P.2d 519 (1978), aff'd, 92 Wn.2d 748, 600 P.2d 1272 (1979)).  In Fisher, with the UIM carrier's knowledge, Fisher arbitrated an injury claim to a final award against the tortfeasor.  Id. at 243.  The Supreme Court held the UIM insurer was bound by any resulting judgment if it had been afforded notice and an opportunity to intervene.  Id. at 249-50.  Although recognizing the difference between UIM and liability insurance, the court concluded this was appropriate in light of "[t]he possibility of anomalous results, redundant litigation, as well as preventing insurers from picking and choosing their judgments."  Id. at 248.  The Supreme Court held a UIM insurer was barred from relitigating the amount of a damage award in a default judgment in Lenzi v. Redland Insurance Co., 140 Wn.2d 267, 280-81, 996 P.2d 603 (2000), and, on the issue of notice, explained that the UIM insured had no duty "other than timely notifying [the insurer] of the filing of the summons and complaint," because the pleadings would "put an alert and concerned party on notice that further proceedings in which it might have an interest may occur," and that to protect its interests, the interested party "needs to act," id. at 276 (footnote omitted).  Cf. Greer v. Nw. Nat'l Ins. Co., 109 Wn.2d 191, 194, 202-03, 743 P.2d 1244 (1987) (third party liability carrier bound by default judgment against insured to the extent of coverage).  Lenzi and Fisher cited with approval Finney, 21 Wn. App. at 617, in which we first applied the rule to UIM insurance, citing East.

to a third party liability carrier. Unlike the liability carrier in East, in T & G the carrier defended under a reservation of rights and brought a declaratory judgment action disputing its obligation to provide coverage on numerous grounds. 165 Wn.2d at 260, 261-62. Even in that setting, the court explained, "The insurer is bound 'to what might, or should, have been litigated as well as to what was actually litigated' " by the insurer by participating in the underlying liability suit. Id. at 263 (internal quotation marks omitted) (quoting Lenzi v. Redland Ins. Co., 140 Wn.2d 267, 280, 996 P.2d 603 (2000)). This includes "[w]hat the insured is legally obligated to pay," which is "the exact issue to be determined in the liability suit." Id. And, the rule binds the insurer for purposes of its contractual coverage obligation up to the policy limit regardless of the existence or not of bad faith in the insurer's failure to participate.[13] Id. at 266-67.

Preclusion is limited in that, where " 'the court makes findings of fact but the judgment is not dependent upon these findings, they are not conclusive between the parties in a subsequent action.' " East, 42 Wn.2d at 926 (quoting RESTATEMENT

---

[13] The insurer's liability is broader when it has acted in bad faith. "[I]f an insurer acts in bad faith by refusing to effect a settlement for a small sum, an insured can recover from the insurer the amount of a judgment rendered against the insured, even if the judgment exceeds contractual policy limits." Besel v. Viking Ins. Co. of Wisconsin, 146 Wn.2d 730, 735, 49 P.3d 887 (2002) (citing Evans v. Cont'l Cas. Co., 40 Wn.2d 614, 627-28, 245 P.2d 470 (1952)). The amount of the judgment is then merely one component among others of the damages for which the insurer is liable. Miller v. Kenny, 180 Wn. App. 772, 802, 325 P.3d 278 (2014) ("Once it is determined that the insurer acted in bad faith by failing to settle, typically the chief component of the insured's damage caused by that failure will be the insured's liability to the third party. This component is measured by the amount of the third party's covenant judgment against the insured. However, the insured's damages may include as an additional component the damages caused *to him* by the insurer's bad faith.").

OF JUDGMENTS § 68, at 309 (1942)). In Finney v. Farmers Insurance Co., we applied the rule to a judgment where "liability was disputed by the parties to the prior litigation and was submitted to the judge for his determination." 21 Wn. App. 601, 618-19, 586 P.2d 519 (1978). But we distinguished Yakima Cement Products Co. v. Great American Insurance Co., 14 Wn. App. 557, 544 P.2d 763 (1975). Finney, 21 Wn. App. at 618. In Yakima Cement, the parties settled a dispute after the plaintiff's insurer had denied tender of defense of counterclaims. 14 Wn. App. at 558-59. After settling, they asked the trial court to enter agreed findings of fact and conclusions of law. Id. at 559. Under East, we held the agreed findings and conclusions were not binding on the insurer in a subsequent coverage action because they were not necessary to the termination of the underlying action. Id. at 560-62. A judgment is " 'not conclusive of any matter which was incidentally cognizable in that action, or which came collaterally in question, nor of any matter to be inferred by argument and construction from the judgment.' " East, 42 Wn.2d at 926 (quoting 2 HENRY CAMPBELL BLACK, A TREATISE ON THE LAW OF JUDGMENTS § 611, at 928 (2d ed. 1902)). These decisions establish that an insurer who is given notice and who fails to defend where there is an obligation to do so is bound by a litigated judgment on the liability indemnified.

A corollary rule of equal antiquity is that such an insurer is bound by a reasonable settlement. Washington recognized the binding effect of a reasonable settlement in Evans v. Continental Casualty Co., 40 Wn.2d 614, 628, 245 P.2d 470 (1952), in which the court concluded, where an insurer defends under a reservation of rights, "it is well established that the insured may settle and recover from the

insurer." Evans traced the rule at least to St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 177, 182, 26 S. Ct. 400, 50 L. Ed. 712 (1906), in which the insured paid out settlements fearing "heavy judgments if the actions were permitted to proceed to trial," and Justice Holmes observed that "a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution." Evans held the rule that the insurer must exercise good faith " 'applies with equal force to a prudent settlement made by the assured in the face of a potential judgment far in excess of the limits of the policy. Why should the assured be required to wait until after the storm before seeking refuge.' " 40 Wn.2d at 629 (quoting Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co., 129 F.2d 621, 627 (10th Cir. 1942)).

However, preclusive effect is given to a settlement only to the extent the settlement is reasonable and made without fraud or collusion. Evans allowed recovery of the amounts the insured paid in settlement, but only "provided that such sums were reasonable and were paid in good faith." 40 Wn.2d at 628. This is especially relevant to a covenant settlement. A covenant settlement involves three features: "(1) a stipulated or consent judgment between the plaintiff and insured, (2) a plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's coverage and bad faith claims against the insurer." Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 764-65, 287 P.3d 551 (2012). If the amount of the stipulated judgment is deemed reasonable by a trial court, in addition to being conclusive as to the insured's liability for purposes of coverage, T & G, 165 Wn.2d 267, it becomes the

16

presumptive measure of that component of damages in a later bad faith action against the insurer, Besel v. Viking Ins. Co. of Wisconsin, 146 Wn.2d 730, 738, 49 P.3d 887 (2002).

"[A] covenant not to execute raises the specter of collusive or fraudulent settlements." Id. This court has observed that in such cases "an insured may settle for an inflated amount to escape exposure and thus call into question the reasonableness of the settlement." Chaussee v. Md. Cas. Co., 60 Wn. App. 504, 510, 803 P.2d 1339, 812 P.2d 487 (1991). To guard against an unreasonable covenant settlement, in Chaussee we adopted the nine factor test to determine reasonableness the Supreme Court had developed to determine setoffs among joint tortfeasors under RCW 4.22.060.[14] 60 Wn. App. at 512. "[T]he Chaussee criteria protect insurers from excessive judgments," the Supreme Court has explained, "especially" where "the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness." Besel, 146 Wn.2d at 739.

---

[14] The factors are: " '[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.' " Chaussee, 60 Wn. App. at 512 (alteration in original) (quoting Glover v. Tacoma Gen. Hosp., 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), abrogated on other grounds by Crown Controls, Inc. v. Smiley, 110 Wn.2d 695, 756 P.2d 717 (1988)). The Supreme Court approved this approach in Besel, 146 Wn.2d at 738-39, formally adopted the use of RCW 4.22.060 in Bird, 175 Wn.2d at 767, and acknowledged again its having done so in Wood v. Milionis Constr., Inc., 198 Wn.2d 105, 120-21, 492 P.3d 813 (2021).

When courts have bound insurers to settlements, they have allowed the insurer to be heard on reasonableness, sometimes even in collateral proceedings litigated after the settlement. In T & G, the insurer had actively participated in the litigation, e.g., 165 Wn.2d at 261-62, and with that background the court conditioned preclusion on the insurer's "opportunity to be involved in a settlement"—as opposed to merely the litigation, id. at 267. Contrary to Hawkins's argument, T & G does not speak expressly to a factual scenario in which the insurer was absent from the litigation. But the authorities on which it relied were explicit that, to be bound, the insurer must be given notice of a proposed covenant settlement and an opportunity to be heard on its reasonableness.

In United Services Automobile Association v. Morris, 154 Ariz. 113, 115-16, 119, 741 P.2d 246 (1987), in the insurer's declaratory judgment action on coverage, the court held the insured could enter into a settlement with the claimant when being defended under a reservation of rights, but cautioned that such settlements "must be made fairly, *with notice to the insurer*, and without fraud or collusion on the insurer."[15] (Emphasis added.) Recognizing the risk of an "inflated" settlement, the court explained the indemnitor will be liable "to the extent that the indemnitee establishes that the settlement was reasonable and prudent under all the circumstances." Id. at 120. The court remanded for a determination of the extent to which the insured could establish reasonableness. Id. at 121. T & G next

---

[15] Morris refers to a "*Damron* agreement," which is a settlement with a covenant not to execute and an assignment of the insured's rights as similarly described in Bird. Morris, 154 Ariz. at 119 (citing Damron v. Sledge, 105 Ariz. 151, 153, 460 P.2d 997 (1969)).

cited Patrons Oxford Insurance Co. v. Harris, 2006 ME 72, 905 A.2d 819. T & G, 165 Wn.2d at 267. In Patrons Oxford, again in the insurer's declaratory judgment action, the court refused to bind the insurer to "an unchallenged amount judicially determined after an uncontested hearing on damages, or an amount not judicially determined to which its insured agrees because the insured could agree to settle for an inflated amount." 2006 ME at ¶ 19. The court remanded for a determination of reasonableness. Id. Finally, T & G cited Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982). T & G, 165 Wn.2d at 267. In Miller, after finding a settlement was not the product of fraud or collusion, 316 N.W.2d at 734, the court held a stipulated judgment was not binding on the insurer until the settling parties established reasonableness, id. at 735. These decisions are consistent with our decision in Yakima Cement, in which we entertained the insurer's argument against being bound by the underlying consent judgment in a subsequent action on coverage. 14 Wn. App. at 559, 561. Thus, in addition to the language and reasoning of T & G, Besel, and Yakima Cement strongly signaling so, the non-Washington authorities on which T & G relied explicitly held that an insurer must be given notice of the reasonableness hearing itself in order to be bound by its outcome, and not merely notice that the underlying suit had been commenced.

Washington decisions discussing notice have described presented circumstances as sufficient to satisfy due process, but without addressing whether lesser notice would have sufficed. See Bird, 175 Wn.2d at 774 ("Farmers was afforded notice, intervened, and participated in a lengthy and highly contested hearing on the issue of the reasonableness. We have considered this process and

19

concluded it adequately protects the interest of insurers against excessive judgments."). This court has held "six days' notice was consistent with due process because it was a reasonable amount of time for [the insurer] to make an appearance and defend its interests at the hearing," where the insurer had been participating in the action, was aware of ongoing settlement negotiations, and the motion to determine reasonableness was brought in compliance with local court rules. Red Oaks Condo. Owners Ass'n v. Sundquist Holdings, Inc., 128 Wn. App. 317, 326 & n.21, 116 P.3d 404 (2005). We said, "To be consistent with due process, notice 'must afford a reasonable time for those interested to make their appearance.' " Id. at 324 (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Bird and Red Oaks held that notice was sufficient to satisfy due process in those cases, but they did not define the minimum necessary to satisfy the Fourteenth Amendment.[16]

The insurer's right to notice of a reasonableness hearing is also not defined by decisions recognizing the insured's option to settle free of contractual restraint without notice to an insurer who has failed to defend. In Nautilus, Inc. v. Transamerica Title Insurance Co. of Washington, a property dispute arose between Nautilus and its neighbor. 13 Wn. App. 345, 347, 534 P.2d 1388 (1975). The neighbor brought suit against Nautilus to quiet title, and Nautilus tendered defense of the action to its insurer, which refused to defend. Id. Nautilus settled

---

[16] To the extent Hawkins argues that ACE received notice because the superior court e-mailed the already signed reasonableness determination to Williams Kastner on July 20, 2019, the day after it appeared for Miguel, this plainly does not amount to notice satisfying the standard of Mullane.

the action by conveying the disputed land to its neighbor and subsequently sued

its insurer to recover damages. Id. On appeal, the insurer argued the damage

award was improper because the valuation of the disputed land was "not within the

range of accepted testimony and was unsupported by substantial evidence." Id.

at 350. We held the trial court's damage award was supported by substantial

evidence because

> the [trial] court in its oral opinion thoroughly analyzed the evidence presented on the question of the front foot valuation of the tidelands. While language of the court indicates that it did not find that either party presented valuations of comparable land, it had before it differing opinions which presented a wide range of factors all of which it could properly consider in arriving at a valuation.

Id. at 351 (footnote omitted). In other words, in the action to obtain coverage, the

parties litigated the reasonable value of the ceded land.

Hawkins focuses on the Nautilus's rejection of the insurer's defense that it

was not bound by a settlement made without its knowledge or consent. Id. at 352.

There, we found no authority requiring the insured to give the insurer notice of a

proposed settlement after the insurer had refused to defend. Id. at 353. But we

did not say that the insurer would be bound by an amount of settlement without an

opportunity to be heard on its reasonableness, again, in a context in which the

insurer received a full trial on the reasonable value owed. Our discussion of notice

in Nautilus concerned the separate question whether an insurer may bar the

insured from settling without the insurer's consent, even after the insurer has

refused to defend. Morris explains the background principle that, traditionally, the

cooperation clause in an insurance policy forbids an insured from settling without

21

the insurer's consent, but this will govern "only claims for which the insurer unconditionally assumes liability under the policy." 154 Ariz. at 119. The insurer waives the right to condition settlement on its consent when it defends under a reservation of rights, id., refuses to defend, Evans, 40 Wn.2d at 628, or refuses in bad faith to settle a claim, Besel, 146 Wn.2d at 736. But the insured's right to settle without notice to the nondefending insurer or its consent does not imply it has the ability to settle for an amount binding on the insurer without the insurer's being heard on whether the amount is reasonable.

Also inapplicable are Sharbono v. Universal Underwriters Insurance Co., 139 Wn. App. 383, 161 P.3d 406 (2007), and Villas at Harbour Pointe Owners Association v. Mutual of Enumclaw Insurance Co., 137 Wn. App. 751, 154 P.3d 950 (2007). In both cases, we held insurers could not avoid covenant judgments on the ground that they had not been given the five day advance notice of settlement contemplated by RCW 4.22.060(1), because the statute's notice requirement does not extend to nonparties. Sharbono, 139 Wn. App. at 407; Villas, 137 Wn. App. at 761. But neither case speaks to the notice that due process requires for a reasonableness hearing, nor endorses a reasonableness determination without notice to the insurer. In both cases, the claimants had given notice of the reasonableness hearing, clearly satisfying due process. In Sharbono, the plaintiffs filed suit against the insurer and sought a reasonableness determination only after having done so, 139 Wn. App. at 392, and, in Villas, there was "no dispute" the insurer had been given notice of the reasonableness hearing and was able to participate, 137 Wn. App. at 761 (citing Red Oaks, 128 Wn. App.

22

at 324). Here, while notice to a nonparty was not required by RCW 4.22.060, that does not answer whether notice to the insurer was required by the Fourteenth Amendment in order for the insurer to be bound by the reasonableness hearing.[17]

Under T & G, when the insured and the claimant have entered into a settlement, the insurer is barred from relitigating the merits of the matter that the insured has settled. 165 Wn.2d at 264-65. In addition, the insurer is bound by the settlement amount to the extent it is reasonable, id. at 266-67, but we hold that binding the insurer to the settlement amount is subject to the insurer being given notice of the settlement and the opportunity to be heard on the issue of reasonableness. This comports with Washington decisions, which have bound an insurer to a reasonable settlement only in circumstances where the insurer was given express notice of the reasonableness hearing,[18] where the insurer otherwise

---

[17] For the first time in reply, ACE argues that Hawkins and Miguel violated RCW 4.22.060 by failing to give notice of their successive settlements. We generally will not consider an argument made for the first time in reply, and decline to do so here. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[18] Bird, 175 Wn.2d at 763 ("After Farmers received notice of the settlement, Bird moved for a determination that the settlement was reasonable under RCW 4.22.060."); Besel, 146 Wn.2d at 739 ("Viking's attorneys were notified of the reasonableness hearing and afforded ample opportunity to respond."); Garza v. Perry, 25 Wn. App. 2d 433, 439-40, 523 P.3d 822 (2023) (after receiving notice of the settlement agreement between the tortfeasor and the plaintiff, the insurer moved to intervene in the lawsuit); Hamblin v. Castillo Garcia, 9 Wn. App. 2d 78, 84, 441 P.3d 1283 (2019) ("The parties reached their settlement agreement and notified National General of the agreement's terms. After receiving notice, National General intervened."); Gosney v. Fireman's Fund Ins. Co., 3 Wn. App. 2d 828, 842-43, 877, 419 P.3d 447 (2018) (settlement on September 2, 2008, forwarded to insurer before reasonableness hearing on December 19, 2008) (because Fireman's had notice of the arbitration and an opportunity to intervene, it was collaterally estopped from contesting the underlying judgment); Miller, 180 Wn. App. at 784 ("Safeco intervened after being notified of the settlement agreement. A reasonableness hearing became unnecessary when Safeco, in May 2005,

had actual knowledge in advance that the court would determine

reasonableness,[19] or where the insurer stipulated the settlement was

_____

stipulated to an order finding that $4.15 million was the reasonable total net amount for the stipulated covenant judgments."); Villas, 137 Wn. App. at 757 ("The Association and T & G notified MOE that a reasonableness hearing on the settlement agreement was scheduled" and "MOE filed a motion to intervene for the 'purpose of challenging the reasonableness of the settlement between Plaintiff and T & G Construction, Inc.' "); Red Oaks, 128 Wn. App. at 320-21 (insurer received a copy of the settlement agreement three days before the reasonableness hearing and the parties stipulated that insurer could intervene).

[19] Wood v. Milionis Constr., Inc., 198 Wn.2d 105, 116, 492 P.3d 813 (2021) (several days before the reasonableness hearing, insurer filed a nonparty motion to intervene, which the trial court granted); T & G, 165 Wn.2d at 261 ("MOE appeared in the subsequent reasonableness hearing and objected to the settlement."); Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wn.2d 751, 755, 58 P.3d 276 (2002) ("the settlements entered into by insureds with third parties and approved by a court as reasonable will be presumed to be reasonable"); see also Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wn.2d 751, 58 P.3d 276 (2002) (reversing Truck Ins. Exch. v. Vanport Homes, Inc., noted at 99 Wn. App. 1051, 2000 WL 239592, at *5 (facts omitted from reversing opinion: " '[The settled claims] are under the policy coverage and were resolved by the negotiated settlements that were entered into by the parties. [TIE] elected not to participate or defend, barring some proof that there were some [sic] bad faith or commissions of fraud, which is completely absent.' ") (some alterations in original) (quoting trial court analysis of the reasonableness of settlement)), adhered to on remand, Ord. on Remand, No. 23888-8-II (Wash. Ct. App. Jan 12, 2001)); Starr Indem. & Liab. Co. v. PC Collections, LLC, 25 Wn. App. 2d 382, 396, 523 P.3d 805, review denied sub nom. Thomsen Ruston, LLC v. Point Ruston, LLC, 1 Wn.3d 1032, 534 P.3d 805 (2023) ("At the June 11 reasonableness hearing, Starr argued that the overall structure of the settlement agreement was unreasonable."); Sykes v. Singh, 5 Wn. App. 2d 721, 726, 428 P.3d 1228 (2018) ("Singh and Sykes filed a joint motion for determination of reasonableness. Zurich intervened and opposed the motion."); Hidalgo v. Barker, 176 Wn. App. 527, 537, 309 P.3d 687 (2013) ("The parties' written submissions in support and opposition to Mr. Hidalgo's petition on the reasonableness of a $3.8 million settlement were voluminous."); Heights at Issaquah Ridge Owners Ass'n v. Derus Wakefield I, LLC, 145 Wn. App. 698, 702, 187 P.3d 306 (2008) ("The HOA and Derus filed a motion to determine the reasonableness of their settlement. Steadfast moved for, and was granted, leave to intervene."); Martin v. Johnson, 141 Wn. App. 611, 616, 170 P.3d 1198 (2007) ("The Estate moved for an order finding the settlement reasonable; the Martins joined the motion. Metropolitan intervened and opposed the motion."); Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 392, 161 P.3d 406 (2007) (plaintiffs commenced action against insurer and thereafter moved for an order

reasonable.[20]  Otherwise, the unchallenged settlement amount does not meet the prophylactic aims of Besel and Chaussee, and even if judicially approved, is too much like the consent judgment we held was not binding on the insurer in Yakima Cement, 14 Wn. App. at 561; accord Patrons Oxford, 2006 ME ¶ 18.

Inquiry into whether a settlement is merely reasonable under Chaussee is a comparatively limited one.  When the issue before the court is whether a settlement the insured has reached with the claimant is reasonable, the insurer is not entitled to, and ACE may not here, relitigate theories that were "unresolved at the time of settlement," Wood v. Milionis Construction, Inc., 198 Wn.2d 105, 129, 492 P.3d 813 (2021), or pursue an "independent determination" of the extent of the insured's liability, T & G, 165 Wn.2d at 262-63, 267.  A settlement may fall within the range of reasonableness and bind the insurer and yet be greater than a hypothetical settlement the insurer might have achieved had it timely participated and fulfilled its obligations to its insured.  When an insurer who had notice fails to

_____

declaring settlement reasonable); Meadow Valley Owners Ass'n v. St. Paul Fire & Marine Ins. Co., 137 Wn. App. 810, 815, 156 P.3d 240 (2007) ("[T]he Association filed a motion to determine the reasonableness of the settlement.  The court granted St. Paul's motion to intervene in the hearing."); Howard v. Royal Specialty Underwriting, Inc., 121 Wn. App. 372, 376, 89 P.3d 265 (2004) ("Royal moved to intervene to contest the reasonableness of the settlement and requested the opportunity to conduct discovery.  The court granted Royal's motion to intervene but did not reopen discovery."); Nautilus, 13 Wn. App. at 351 (the trial court had before it "differing opinions which presented a wide range of factors all of which it could properly consider in arriving at a valuation.").

[20] Evans, 40 Wn.2d at 624 (the parties stipulated that the settlement was reasonable); Moratti ex rel. Tarutis v. Farmers Ins. Co. of Wash., 162 Wn. App. 495, 500-01, 254 P.3d 939 (2011) ("Farmers intervened and attended the reasonableness hearing where the stipulated judgment and settlement were approved.  Farmers did not contest the reasonableness of the judgment, or the trial court's findings that the judgment was reasonable and not the product of fraud or collusion.").

defend where there is an obligation to do so, it has "voluntarily forfeited its ability to protect itself against an unfavorable settlement." Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wn.2d 751, 765-66, 58 P.3d 276 (2002).

Because Hawkins and Miguel did not give ACE notice of the settlement and the reasonableness hearing, the reasonableness determination cannot bind ACE consistent with due process. As a result, as to ACE, there has been no binding determination that the settlement was reasonable, and there is no current basis on which to bind ACE to the settlement amount, or find it liable for that amount, interest, or treble damages. Therefore, the May 3, 2023 summary judgment order, judgment against ACE finding it liable for the consent judgment, and judgment against ACE finding it liable for treble damages under IFCA must be reversed to that extent.[21] ACE remains subject to being bound to the extent the settlement may be determined to be reasonable and without fraud and collusion under the Chaussee factors.

---

[21] ACE argues the superior court erred in denying its CR 60 motion to vacate the two settlement agreements between Hawkins and Miguel and Miguel's consent judgment. ACE cites no authority stating a court may, pursuant to CR 60, vacate a contract made between private parties, such as here the settlement agreements and Miguel's representation agreement with his counsel. As to the balance of ACE's CR 60 motion, because the reasonableness determination is not binding on ACE, and ACE remains entitled to be fully heard in the trial court on the Chaussee factors, it is not necessary to address ACE's arguments that the settlements, order, and consent judgment should be vacated, or its arguments challenging the reasonableness of the settlement. It is also not necessary to address ACE's arguments about discovery, because on remand all Chaussee factors remain at issue, and with reasonableness yet to be determined as to ACE, the superior court will need to revisit anew the scope of any necessary discovery. To the extent the superior court limited discovery in its orders dated October 7, 2022 and November 4, 2022, based on the binding nature of the reasonableness determination, the superior court erred because the reasonableness determination entered without notice is not binding on ACE.

III

ACE argues the superior court erred in granting Hawkins partial summary judgment by ruling as a matter of law that ACE breached the insurance contract, failed to act in good faith, and violated IFCA, because questions of fact were present. We disagree.

We review de novo an order granting summary judgment, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party. Pearson v. Dep't of Lab. & Indus., 164 Wn. App. 426, 431, 262 P.3d 837 (2011). On a question of fact, summary judgment is appropriate only if reasonable persons could reach but one conclusion. Marincovich v. Tarabochia, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). A party opposing a motion for summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or affidavits that are not admissible as evidence under CR 56(e). Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 220, 522 P.3d 80 (2022); Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 61, 322 P.3d 6 (2014). The nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists. Herman v. Safeco Ins. Co. of Am., 104 Wn. App. 783, 787-88, 17 P.3d 631 (2001).

A

A breach of contract has been defined as "[a]ny unjustified failure to perform when performance is due." Colo. Structures, Inc. v. Ins. Co. of the W., 125 Wn. App. 907, 917, 106 P.3d 815 (2005) (explaining partial and total breach), aff'd, 161 Wn.2d 577, 167 P.3d 1125 (2007). Under a liability insurance policy, the duty to

27

defend is triggered if the policy conceivably covers allegations in the complaint. Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 53, 164 P.3d 454 (2007). An insurer has a duty to defend " 'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.' " VanPort, 147 Wn.2d at 760 (quoting Unigard Ins. Co. v. Leven, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999)). An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." Id. We do not understand ACE to challenge its having a duty to defend Miguel when Hawkins commenced suit, but rather to argue that there is a fact question about whether it defended him.

The evidence shows that on November 7, 2017, Hawkins's counsel sent ACE's claims examiner notice of representation. According to ACE's claim file, on December 6, 2017, a Sedgwick claims adjuster called Miguel to discuss the collision and documented that Miguel had provided a statement and photos. Between January and April 2018, there was communication between Sedgwick and Hawkins's attorney regarding settlement of the claim. Miguel was served on October 10, 2018, and by October 12, 2018, Sears knew that Miguel had been served. Sears delayed forwarding service to Sedgwick, but did so on November 9, 2018, and by November 12, 2018, notice of the lawsuit had been given to the same claims examiner Hawkins's counsel had communicated with before suit was filed.[22] ACE did not at that time appoint counsel to appear for Miguel or otherwise

---

[22] ACE asserts that during this period, it was transitioning claims administration responsibilities to a new administrator, "ESIS." The record ACE has offered is inadequate to either support that it in fact was transitioning from

defend in response to process, allowing default to be entered against Miguel on November 20, 2018. This was before Miguel received protection from the bankruptcy stay starting in January 2019. When Williams Kastner mailed the extended bankruptcy stay to Hawkins's counsel, it did not claim at that time to represent Miguel. There was no further communication from ACE purportedly on behalf of Miguel until July 19, 2021, more than three months after the bankruptcy stay was lifted as to Miguel, when Williams Kastner filed a notice of appearance on behalf of Miguel. Miguel's attorney subsequently e-mailed Williams Kastner asserting Miguel did not consent to its representation and Miguel testified during his deposition that "nobody had represent[ed] [him] besides [his] lawyer." Nothing controverted the evidence that, except possibly for one call from Sedgwick, neither ACE nor Williams Kastner communicated or attempted to communicate with Miguel, and at the same time through delay and inaction allowed proceedings to be taken against him after he had been lawfully served and was unprotected by the Sears bankruptcy stay. Viewing the facts in the light most favorable to ACE, the superior court did not err in concluding ACE failed to defend Miguel, and thus breached the contract.

B

Insurers in Washington owe insureds a duty of good faith,[23] and an insurer's breach of this duty is a tort. Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 399,

---

Sedgwick to a new administrator, or explain how the transition impacted its ability to respond to service of process upon Miguel, or justified its failure to do so.

[23] The term "bad faith" is interchangeable with the duty to act in good faith. Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 385, 715 P.2d 1133 (1986); Tyler v. Grange Ins. Ass'n, 3 Wn. App. 167, 173, 473 P.2d 193 (1970).

823 P.2d 499 (1992). Claims of an insurer's failure to act in good faith "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485, 78 P.3d 1274 (2003). An insurer fails to act in good faith "if its breach of the duty to defend was unreasonable, frivolous, or unfounded." Am. Best Food, Inc. v. Alea London, Ltd., 168 Wn.2d 398, 412, 229 P.3d 693 (2010). An insurer is not automatically liable for failure to act in good faith if it wrongly denies a duty to defend, but to avoid liability, an insurer must show that it had a reasonable, nonfrivolous argument. See id. at 412-13. "An insurer may breach its broad duty to act in good faith by conduct short of intentional bad faith or fraud, although not by a good faith mistake." Sharbono, 139 Wn. App. at 410-11. "An insurer must give equal consideration to its policyholder's interests as well as its own." Id. at 411. Whether an insurer has failed to act in good faith is a question of fact. Smith, 150 Wn.2d at 485.

ACE's evidence fails to create a genuine issue of material fact about whether it failed to act in good faith. Although it notes the bankruptcy stay that eventually protected Miguel for some of the period in question, it fails to offer even an explanation beyond Sears's original untimely forwarding of process for its near total lack of action in response to its insured being served. Other than pointing to the bankruptcy stay, which did not protect Miguel until three months after he was served, ACE provides no explanation for neglecting to appoint counsel for Miguel, contact him, contact plaintiff's counsel on his behalf, appear on his behalf, or even learn suit had been filed, and allowing default to be entered against him—all before

30

he was protected by the bankruptcy stay. After the bankruptcy stay's protections were withdrawn from Miguel, ACE allowed another three months to pass during which it took no action on his behalf. And its only action at that time was to direct counsel to file an appearance, again without contacting him, without contacting plaintiff's counsel on his behalf, and yet again allowing proceedings to be taken against him through its delays and inactivity. Viewing the evidence in the light most favorable to ACE, no reasonable juror could reach any conclusion other than that ACE's failure to defend was unreasonable, and the superior court did not err in concluding ACE breached its duty of good faith.

C

Under IFCA, "Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action . . . to recover actual damages sustained." RCW 48.30.015(1). The statute " 'describes two separate acts giving rise to an IFCA claim,' " requiring the insured to show " 'that the insurer unreasonably denied a claim for coverage *or* that the insurer unreasonably denied payment of benefits.' " Perez-Crisantos v. State Farm Fire & Cas. Co., 187 Wn.2d 669, 683, 389 P.3d 476 (2017) (quoting Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 79, 322 P.3d 6 (2014)). "If either or both acts are established, a claim exists under IFCA."[24] Ainsworth, 180 Wn. App. at 79.

---

[24] IFCA does not create an independent cause of action for regulatory violations. Perez-Crisantos, 187 Wn.2d at 684.

Washington has recognized that the insurer's "duty to defend the insured is one of the main benefits of the insurance contract." Butler, 118 Wn.2d at 392. "The defense may be of greater benefit to the insured than the indemnity. The defense must be prompt and timely. An insurer refusing to defend exposes its insured to business failure and bankruptcy." VanPort, 147 Wn.2d at 765. The insurer owes a duty of good faith "in both nondefense and defense settings," making the duty of good faith just as salient when a carrier simply does not defend despite having a duty to do so as when it expressly denies coverage. Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 386, 715 P.2d 1133 (1986) (mandating enhanced obligation when insurer defends under a reservation of rights). The duty to defend is a valuable service paid for by the insured and one of the main benefits of the liability insurance policy. Griffin v. Allstate Ins. Co., 108 Wn. App. 133, 138, 29 P.3d 777, 36 P.3d 552 (2001). Washington requires insurers to give equal consideration in all matters to the insured's interest in providing defense under a liability policy, among other reasons, "[b]ecause security and peace of mind are principal benefits of insurance." Nat'l Sur. Corp. v. Immunex Corp., 176 Wn.2d 872, 878, 297 P.3d 688 (2013) (citing Tank, 105 Wn.2d at 386). The insured's entitlement to defense under a liability policy thus affords the insured the peace of mind that the insurer will deal with it fairly and justly in defending against claims, and conduct by the insurer which erodes this security breaches the duty to act in good faith. Cf. Coventry Assocs. v. Am. States Ins. Co., 136 Wn.2d 269, 283, 961 P.2d 933 (1998) (first party coverage).

It follows that where an insurer fails to provide defense under a liability policy that it was required to provide, and the failure was unreasonable, the insurer has unreasonably denied payment of benefits under IFCA.  This comports with Washington's recognition that defense is one of the main benefits of a liability policy, Butler, 118 Wn.2d at 392, and with IFCA's intent to protect insureds, among other ways, "by encouraging insurers to honor their commitments by making it illegal to unreasonably delay or deny legitimate claims," Beasley v. GEICO General Insurance Co., 23 Wn. App. 2d 641, 664, 517 P.3d 500 (2022), such as here a legitimate tender of defense.  As described above, taking the evidence in the light most favorable to ACE, there is no genuine issue of material fact that ACE failed to provide defense to Miguel that it was required to provide, and that failure was unreasonable.  The superior court did not err in concluding ACE violated IFCA.

IV

ACE argues the case should be assigned on remand to a judge other than the judge who granted summary judgment, asserting the judge demonstrated that "he was not neutral in resolving the disputes between the parties" and "expressed a clear bias towards ACE in resolving the issues."  We disagree.  ACE bases its arguments on hearings during which a superior court judge overlooked a previous indication he would retain jurisdiction of the case.  At a hearing on October 31, 2022, the hearing judge stated with the agreement of the parties that he would "take full jurisdiction of this case."  It is undisputed that certain other motions were

later presented to other judicial officers,[25] there was never a written preassignment order, and at the May 3, 2023 summary judgment hearing before the same judge, the judge failed to recall having retained the case. Pointing to a curt exchange between the judge and ACE's counsel, ACE argues on appeal that the judge must be removed for bias.

Because the trial court is presumed to perform its functions regularly and properly without bias or prejudice, Wolfkill Feed & Fertilizer Corp. v. Martin, 103 Wn. App. 836, 841, 14 P.3d 877 (2000), "[a] party asserting a violation of the [appearance of fairness] doctrine must produce sufficient evidence demonstrating bias . . . . [M]ere speculation is not enough," In re Pers. Restraint of Haynes, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000). Apart from the superior court's rulings and the judge's forgetfulness of retaining jurisdiction of the case, ACE cites no evidence of bias and thus we decline to disqualify any judicial officers on remand. However, for the sake of clarity we accept the court's view expressed at the May 3, 2023 hearing that no preassignment order is in effect, and the case will be remanded to the superior court without any preassignment. Any request for preassignment, if desired in the future, may be presented to the superior court in accordance with its local rule. See Snohomish County Local Administrative Rule 0.02(g) ("Cases involving complex issues of fact or law, or in which substantial pretrial proceedings are anticipated, may be preassigned by the Presiding Judge

---

[25] There is no contention any of the motions were presented in violation of the October 31, 2022 oral ruling.

or designee to a trial department at any time for pretrial proceedings and/or for trial.").

V

Hawkins requests attorney fees on appeal, citing Olympic Steamship and IFCA.

RAP 18.1(a) allows this court to award attorney fees and costs on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." In general, where a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal. Richter v. Trimberger, 50 Wn. App. 780, 786, 750 P.2d 1279 (1988). To the extent Hawkins prevails in this court on establishing ACE's liability for its violation of IFCA, she shall recover attorney fees for that aspect of this appellate review, to be determined by the trial court, in the event she ultimately prevails on her IFCA claim on remand. However, Hawkins otherwise does not prevail. Because we reverse in part the summary judgment order entered against ACE and the reasonableness determination is not binding on ACE, the superior court's award of attorney fees is vacated and remanded for future determination in the event Hawkins ultimately prevails and is entitled to recover attorney fees at the termination of the action.

VI

We affirm the superior court's May 3, 2023 summary judgment order to the extent it ruled that ACE is liable for breach of contract for failing to defend Miguel, for failure to act in good faith, and for violation of IFCA. However, in the absence of a reasonableness determination that is binding on ACE, and any resulting

presumption, and with the trial court proceedings not yet having reached any other damages, the existence and extent of ACE's coverage obligation and any damages proximately caused by ACE's breaches remain to be determined. We therefore reverse to that extent the May 3, 2023 summary judgment order and reverse in full the May 3, 2023 and May 23, 2023 judgments. We accordingly affirm in part, reverse in part, and remand for proceedings consistent with this opinion. The parties shall bear their own costs.

Birk, J.

WE CONCUR:

Díaz, J.

Hazelrigg, ACJ